Docket No. 103562.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

JOHN BUENZ, as Special Adm'r of the Estate of Olga L. Buenz, Deceased, v. FRONTLINE TRANSPORTATION COMPANY *et al.* (Frontline Transportation Company, Appellant; China Ocean Shipping Company Americas, Inc., Appellee).

*Opinion filed January 25, 2008.*

JUSTICE GARMAN delivered the judgment of the court, with opinion.

Justices Fitzgerald, Karmeier and Burke concurred in the judgment and opinion.

Chief Justice Thomas and Justices Freeman and Kilbride took no part in the decision.

## OPINION

On October 1, 2003, Olga Buenz was involved in a multiple-vehicle traffic accident that resulted in her death. Twelve separate actions were filed by various plaintiffs and later consolidated. Each action named China Ocean Shipping Company Americas, Inc. (COSCO), and Frontline Transportation Company (Frontline) as defendants. Plaintiff John Buenz, Olga's husband, filed a wrongful-death action alleging negligence on the part of defendants COSCO,

Frontline, and Vincente A. Zepeda, Frontline's alleged employee and the driver of the tractor-trailer that Buenz alleges caused the accident.

In June 2004, COSCO filed a counterclaim against Frontline and Zepeda. Count IV of this counterclaim sought a declaration that Frontline be obligated, pursuant to express contractual terms set forth in an equipment interchange agreement, to indemnify COSCO for "any and all costs, expenses, damages, and liability *** in the Buenz litigation." COSCO moved for and was granted summary judgment on this count by the circuit court of Cook County.

In addition to granting the motion for summary judgment, the court entered a written finding pursuant to Rule 304(a) that there was no just reason to delay appeal or enforcement of the judgment. 210 Ill. 2d R. 304(a). Subsequently, the court specified that its order applied to all pending consolidated cases. It is undisputed that the meaning and legal effect of the equipment interchange agreement is identical in each case.

After its motion to reconsider was denied, Frontline appealed. The appellate court affirmed and remanded. 368 Ill. App. 3d 10. Frontline then petitioned for and was allowed leave to appeal to this court pursuant to Rule 315 (210 Ill. 2d R. 315).


BACKGROUND

John Buenz's complaint alleged that a tractor-trailer operated by Zepeda, a Frontline employee, struck a minibus in which his wife Olga was a passenger, causing her death. The complaint further alleged that COSCO "owned and/or owned a leasehold on, maintained, and/or controlled the trailer and/or container which were part of the tractor trailer" driven by Zepeda. While the complaint alleged that Frontline committed various negligent acts which caused the accident and the death of Olga Buenz, it also alleged that COSCO committed several negligent acts that contributed to the accident. These acts and omissions included COSCO's permitting the tractor and/or container to be used and operated when it knew or should have known that it was not in safe operating condition; permitting the trailer to be used and operated when it knew or should have known that it was not equipped with proper brakes; and failing to inspect and repair the trailer.

-2-

To defend against these claims, COSCO relied on an equipment interchange agreement. This agreement dealt with the relationship between COSCO and Frontline regarding the use and/or interchange of equipment. In relevant part, the agreement provided:

"3. ACQUIRING CARRIER [defined as Frontline] Responsibility and Liability:

D. The ACQUIRING CARRIER shall be responsible to The Line [defined as COSCO] for the performance of this agreement whether such equipment may be in the possession of itself or others, until return of the equipment to The Line.

F. INDEMNITY–The ACQUIRING CARRIER shall indemnify The Line against, and hold The Line harmless for any and all claims, demands, actions, suits, proceedings, costs, expenses, damages, and liability, including without limitation attorney's fees, arising out of, [in] connection with, or resulting from the possession, use, operation or returning of the equipment during all periods when the equipment shall be out of the possession of The Line."

The parties agree that the interchange agreement described above was in full force and effect at the time of the collision at issue in this case. Moreover, there is no dispute that Frontline is in the business of providing freight transportation by interstate trucks, including tractor-trailers. Additionally, Frontline has admitted that it had a contractual relationship with Zepeda, the driver of the tractor-trailer involved in the accident.

Frontline contends that COSCO is not entitled to indemnification based upon the interchange agreement. Specifically, Frontline asserts that the phrase "any and all," as used in the interchange agreement, is neither explicit nor clear enough to signify the parties' intention that Frontline indemnify COSCO for claims resulting from COSCO's own negligence. Additionally, Frontline argues that the negligence claims filed against COSCO do not fall within the scope of the indemnity provision because they relate to periods in which the equipment was in, rather than out, of the possession of COSCO.

COSCO responds that the facts, viewed in conjunction with the explicit language of the interchange agreement, establish as a matter of law that in the underlying litigation Frontline is obligated to

indemnify and hold COSCO harmless for any and all costs, expenses, damages, and liability, including attorney fees. COSCO argues that the phrase "any and all" contained in the interchange agreement establishes the parties' intent that COSCO be indemnified even against claims arising out of its own negligence. COSCO asserts that Frontline's argument that the negligence claims filed against it do not fall within the scope of the indemnity provision has been forfeited, as it was not raised in Frontline's petition for leave to appeal. Barring forfeiture, COSCO asserts that the negligence claims against it do fall within the scope of the conduct described in the indemnity provision.

## ANALYSIS

As noted, Frontline asserts that the appellate court improperly affirmed the circuit court's grant of COSCO's motion for summary judgment and subsequent denial of Frontline's motion to reconsider. This court reviews the grant of summary judgment *de novo*. *Forsythe v. Clark USA, Inc.*, 224 Ill. 2d 274, 280 (2007). Reviewing a summary judgment disposition, this court construes all evidence strictly against the movant and liberally in favor of the nonmoving party. *Forsythe*, 224 Ill. 2d at 280.

An indemnity agreement is a contract and is subject to contract interpretation rules. *Virginia Surety Co. v. Northern Insurance Co. of New York*, 224 Ill. 2d 550, 556 (2007). The cardinal rule of contract interpretation is to discern the parties' intent from the contract language. *Virginia Surety*, 224 Ill. 2d at 556. Where the contract language is unambiguous, it should be given its plain and ordinary meaning. *Virginia Surety*, 224 Ill. 2d at 556.

### I. Construction of the Equipment Interchange Agreement

This court has previously considered whether an indemnity agreement provided indemnification for an indemnitee's own negligence. In *Westinghouse Electric Elevator Co. v. LaSalle Monroe Building Corp.*, 395 Ill. 429, 430 (1946), an elevator repair company employee was hit by a falling elevator and died. It was conceded that the injury and death were due to the negligence of the building owner's employee's negligence. The elevator repair company made payments pursuant to the Workers' Compensation Act and then sued

the building owner to recover the amount paid based on the owner's negligence. The parties' indemnity contract provided:

> " 'The contractor [repair company/indemnitor] further agrees to indemnify and hold the owner, the owner's employees and agents, the Architects and Engineers, and the City of Chicago, wholly harmless from any damages, claims, demands or suit by any person or persons arising out of any acts or omissions by the Contractor, his agents, servants or employees in the course of any work done in connection with any of the matters set out in these specifications, and the contractor shall carry at his own expense insurance in a company satisfactory to the owner to cover the aforesaid liabilities.' " *Westinghouse Electric*, 395 Ill. at 432.

Construing the above language, both the trial and appellate courts found in favor of the elevator repair company. This court affirmed, holding that the contract language was insufficient to indemnify the owner/indemnitee for the owner/indemnitee's own negligence.

The language of the contract at issue in *Westinghouse* supports this conclusion. The repair company/indemnitor "agrees to indemnify and hold the owners *** wholly harmless from any damages *** arising out of any acts or omissions by the Contractor [repair company/indemnitor]." *Westinghouse Electric*, 395 Ill. at 432. This clearly refers to and provides indemnity for acts or omissions by the repair company/indemnitor. Because the negligence at issue in *Westinghouse* was that of the owner, then, it could not be considered an act or omission by the repair company and the indemnity contract could not apply.

This court recognized, however, that in certain circumstances a contract could indemnify a person for that person's own negligence. We stated that "[i]t is quite generally held that an indemnity contract will not be construed as indemnifying one against his own negligence, unless such a construction is required by clear and explicit language of the contract [citations] or such intention is expressed in unequivocal terms." *Westinghouse Electric*, 395 Ill. at 433. We then held that, under the facts of *Westinghouse*, to adopt a construction of the contract that would provide indemnity for the owner/indemnitee "would impose on the contractor [repair company] the duty to indemnify against injuries entirely without his control, and such should

-5-

not be adopted in the absence of clear language in the contract including injuries arising from the negligence of [the owner's] own servants." *Westinghouse Electric*, 395 Ill. at 434.

This court has had occasion to review other contracts that were purported to indemnify an indemnitee for its own negligence. *Tatar v. Maxon Construction Co.*, 54 Ill. 2d 64, 66 (1973) (no indemnity for indemnitee's own negligence where indemnity clause covered " 'all expenses, claims, suits, or judgments *** by reason of, arising out of, or connected with, accidents, injuries, or damages, which may occur upon or about the Subcontractor's work' "); *Zadak v. Cannon*, 59 Ill. 2d 118, 121 (1974) (no indemnity for indemnitee's own negligence where language referred to "claims 'arising out of any such work'–'such work' being that performed by [indemnitor's] employees under the contract"); *Schek v. Chicago Transit Authority*, 42 Ill. 2d 362, 363 (1969) (providing indemnity for indemnitee's own negligence where language stated that indemnitor " 'shall indemnify and save harmless *** Chicago Transit Authority [indemnitee] from all claims for any such loss, damage, injury or death, whether caused by the negligence of Licensor, Chicago Transit Authority, their agents or employees, or otherwise' ").[1] We have also noted, however, that it

---

[1] It is important to note that the Construction Contract Indemnification for Negligence Act currently voids any agreement in a construction contract to indemnify or hold harmless a person from that person's own negligence. 740 ILCS 35/0.01 *et seq.* (West 2006). As such, if *Westinghouse*, *Tatar*, and *Zadak* were heard today, there would be no argument concerning whether the language in each case was unequivocal enough to indemnify an indemnitee for that indemnitee's own negligence because the act described above would specifically void any such construction. This case does not involve a construction contract, however, so the Construction Contract Indemnification for Negligence Act does not apply. The parties do not dispute that barring a statutory provision to the contrary, contracts that clearly and explicitly provide indemnity against one's own negligence are valid and enforceable. See, *e.g.*, *Scheck*, 42 Ill. 2d at 363-64; *Blackshare v. Banfield*, 367 Ill. App. 3d 1077, 1079 (2006)*; Hankins v. Pekin Insurance Co.*, 305 Ill. App. 3d 1088, 1093 (1999); *Burlington Northern R.R. Co. v. Pawnee Motor Service, Inc.*, 171 Ill. App. 3d 1043, 1045 (1988). Accordingly, the general discussion of such contracts found in *Westinghouse*, *Tatar*, and *Zadak* remains good law.

"serve[s] no useful purpose to attempt to analyze or reconcile the numerous cases interpreting indemnity clauses" since each individual case "depends upon the particular language used and the factual setting of the case." *Zadak*, 59 Ill. 2d at 121. While these cases, and the others cited below, do not involve the precise language in this case, they do provide guidance for our analysis of the similar language at issue here.

Frontline asserts that a review of case law from various appellate districts establishes that the interchange agreement between COSCO and Frontline does not provide COSCO indemnity from its own negligence. Chiefly, Frontline relies upon *Karsner v. Lechters Illinois, Inc.*, 331 Ill. App. 3d 474 (2002). Frontline acknowledges that the appellate court in this case declined to follow *Karsner*, but Frontline contends that the language of the indemnification provision in *Karsner* is similar to the language of the indemnification provision at issue in this case.

In *Karsner*, the plaintiff filed an action against the defendants for injuries he sustained while unloading a trailer containing the defendants' merchandise. *Karsner*, 331 Ill. App. 3d at 475. The plaintiff claimed that the defendants had negligently loaded the trailer such that when he delivered and unloaded the trailer he was injured. *Karsner*, 331 Ill. App. 3d at 475. The defendants filed a third-party indemnity action against the plaintiff's employer and its parent company (collectively, the employer). *Karsner*, 331 Ill. App. 3d at 475. The defendants and the employer had a contract which contained the following provision:

> " 'Carrier [the employer] shall indemnify and hold Lechters [a defendant] harmless from and against any and all claims, actions [*sic*] damages, liability and expense, including attorneys fees, in connection with loss of life, personal injury, and/or damage to property arising from or out of the pick-up, transportation and delivery of the property of Lechters by carrier, and the use of any motor vehicle or other equipment by Carrier in connection therewith.' " *Karsner*, 331 Ill. App. 3d at 476.

Like the agreement in this case, the agreement in *Karsner* broadly provided indemnity from and against "any and all claims."

The *Karsner* court, construing the provision quoted above, found that even though "the contract states that Navajo [the employer] shall indemnify and 'hold Lechters harmless from and against any and all claims, actions [*sic*] damages, liability and expense,' this language is insufficient to give Lechters indemnity for its own negligence." *Karsner*, 331 Ill. App. 3d at 477. Supporting its position, the *Karsner* court pointed to this court's decision in *Westinghouse* as well as another appellate decision, *McNiff v. Millard Maintenance Service Co.*, 303 Ill. App. 3d 1074 (1999). Additionally, the *Karsner* court indicated a concern that any interpretation which required the employer to indemnify the defendants for the defendants' own negligence would contravene established public policy.

In citing *Westinghouse*, the *Karsner* court pointed out that *Westinghouse* "provid[ed] that the language 'hold *** harmless from any damages, claims, demands or suit by any person, arising out of any acts or omissions' was not clear and specific language rendering the subcontractor liable for the general contractor's own negligence." *Karsner*, 331 Ill. App. 3d at 477. What the *Karsner* court did not point out, however, was that the indemnity agreement in *Westinghouse* contained language in addition to that expressed directly above. The agreement in *Westinghouse*, more fully expressed, stated that the indemnitor " 'agrees to indemnify and hold the owner *** wholly harmless from any damages *** arising out of any acts or omissions *by the Contractor* [indemnitor].' " (Emphasis added.) *Westinghouse Electric*, 395 Ill. at 432. This limiting language clearly indicates that the agreement provided indemnity only for acts or omissions by the indemnitor.

In citing *McNiff*, the *Karsner* court pointed out that *McNiff* "provid[ed] that the phrase, 'indemnify *** from and against any and all *** liabilities' was insufficient to provide indemnification for the indemnitee's own negligence." *Karsner*, 331 Ill. App. 3d at 477. The indemnification agreement in *McNiff* also provided, however, that the indemnification covered any and all claims " 'relating to *** allegedly or actually arising out of or incidental to the Work, including, without limiting the foregoing, all acts and omissions of the officers, employees and agents of Contractor [the indemnitor] or any of its subcontractors.' " *McNiff*, 303 Ill. App. 3d at 1076. The *McNiff*

court's finding, then, is specifically supported by limiting language within the contract.

The above analysis makes evident that the *Karsner* court's reliance on *Westinghouse* and *McNiff* is misplaced. The indemnification language in *Westinghouse* is specifically limited to "any and all" claims arising out of or in connection with the acts or omissions of the indemnitor just as the indemnification language in *McNiff* is specifically limited to "any and all" claims arising out of what the *McNiff* court considered to be the indemnitor's work. In *Karsner*, by contrast, no limiting language is evident, as the contract at issue provided that the " '[the indemnitor] shall indemnify and hold [the indemnitee] harmless from and against any and all claims *** arising from or out of the pick-up, transportation and delivery of the property of [the indemnitee] by [the indemnitor], and the use of any motor vehicle or other equipment by [the indemnitor] in connection therewith.' " *Karsner*, 331 Ill. App. 3d at 476. Focusing on this language alone, the indemnitee in *Karsner* was entitled to indemnification, even for its own negligence, as the injury at issue arose from the delivery of the indemnitee's property by the indemnitor. This was not, however, the *Karsner* court's holding.

Frontline points to other cases which it claims have held, like *Karsner*, that the inclusion of the phrase "any and all" within an indemnification clause is insufficient to indemnify an indemnitee for its own negligence. See, *e.g.*, *Blackshare v. Banfield*, 367 Ill. App. 3d 1077 (2006); *Hankins v. Pekin Insurance Co.*, 305 Ill. App. 3d 1088 (1999). A closer inspection of *Blackshare* and *Hankins* reveals, however, just as a closer inspection of *Westinghouse* and *McNiff* revealed, that these cases do not stand for that proposition. As in *Westinghouse* and *McNiff*, the language of the indemnification agreements in *Blackshare* and *Hankins* contained limiting language expressly restricting indemnification liability.

In *Blackshare*, a power cooperative brought an indemnification action against an electrical contractor based upon a written contract. *Blackshare*, 367 Ill. App. 3d 1077. The contract provided that the "[c]ontractor shall defend and indemnify and save Owner and all of Owner's employees harmless from any and all claims *** arising or alleged to arise from personal injuries, including death, or damage to property, occurring during the performance of the work and due to

the negligent acts or omissions of the Contractor." See *Blackshare*, 367 Ill. App. 3d at 1078. The *Blackshare* court found critical the limiting language of the above provision that promised indemnity for damages that were "due to the negligent acts or omissions of the Contractor" and held that the contract limited the electrical contractor's indemnity obligation to a percentage equal to that of the contractor's negligence, not extending to indemnification for the power cooperative's own negligence. *Blackshare*, 367 Ill. App. 3d at 1078.

In *Hankins*, a cartage carrier sought indemnification coverage for its own negligence against a cartage operator based upon a written contract. *Hankins*, 305 Ill. App. 3d 1088. The agreement provided that the cartage operator would indemnity and hold harmless the cartage carrier " 'from and against all claims, damages, losses[,] and expenses *** which might arise out of the performance of any work to be performed hereunder by CARTAGE OPERATOR *** caused in whole or in part by CARTAGE OPERATOR'S negligent act or omission.' " *Hankins*, 305 Ill. App. 3d at 1089. Interpreting this language, the *Hankins* court found that the indemnification provided was limited to indemnity for injury caused in whole or in part by the cartage operator's negligence, not extending to that of the cartage carrier's negligence. *Hankins*, 305 Ill. App. 3d at 1093.

Focusing on the language used in *Blackshare* and *Hankins*, then, it is apparent that they do not stand, as Frontline asserts, for the proposition that the inclusion of the phrase "any and all" within an indemnification clause is insufficient to indemnify an indemnitee for its own negligence. To be sure, *Blackshare* and *Hankins* contain similar "any and all" language to that used in this case. Like *Westinghouse* and *McNiff*, however, they also contained express clauses limiting indemnification to negligence occasioned by the indemnitor. Accordingly, both cases merely stand for the proposition that when an indemnity contract expressly limits itself to the negligence of the indemnitor, courts will not strain, simply because the contract also contains "any and all" language, to read into that contract indemnification for an indemnitee's own negligence. Indeed, to do so would violate this court's recognition in *Westinghouse* that "[i]t is quite generally held that an indemnity contract will not be construed as indemnifying one against his own negligence, unless such a

construction is required by clear and explicit language of the contract [citations] or such intention is expressed in unequivocal terms." *Westinghouse Electric*, 395 Ill. at 433.

The indemnification agreement in *Karsner*, unlike the agreements found in *Westinghouse*, *McNiff*, *Blackshare*, and *Hankins*, included clear and explicit contract language providing indemnification for the indemnitee's own negligence in exactly the type of situation presented in that case–where the injury arose from the delivery of the indemnitee's property by the indemnitor. This makes clear, then, that *Karsner* stands alone for the proposition that the inclusion of the phrase "any and all" within an indemnification clause is insufficient to indemnify an indemnitee for its own negligence.

It is not simply the use of the phrase "any and all" that determines whether a particular contract provides indemnification for an indemnitee's own negligence. The phrase must be read in the context of the entire contract. If the contract warrants it, though, the use of the phrase "any and all" may indicate, as COSCO contends, that the parties intended an indemnitee be indemnified, even for the indemnitee's own negligence. See, *e.g.*, *Economy Mechanical Industries, Inc. v. T.J. Higgins Co.*, 294 Ill. App. 3d 150, 155 (1997) (interpreting contract language which provided that "[indemnitor] will at all times protect, indemnify and save and keep harmless the [indemnitee] against and from any and all loss, cost, damage or expense, arising out of or from any accident or other occurrence" to provide indemnification for an indemnitee's own negligence (emphasis omitted)); *Rios v. Field*, 132 Ill. App. 2d 519, 522 (1971) (holding that the use of the phrase "any and all," even if it is "the sole descriptive reference to the cause of the injury, claim or loss indemnified," can render an agreement "sufficiently broad to include indemnification for claims or injuries caused by indemnitee's own negligence" subject to any limitations in the agreement); *Haynes v. Montgomery Ward & Co.*, 47 Ill. App. 2d 340, 341, 346-47 (1964) (where contract provided that "[the indemnitor] holds the [indemnitee] harmless for any and all injuries or accident sustained by [the indemnitor's] employees while on the premises of [the indemnitee] or while en route to perform any services for [the indemnitee]," the court held that "[t]he words 'any and all' are all inclusive; their conciseness does not limit their scope; their coverage

would not have been extended by making them more specific. If the words 'any and all' are to have their commonly accepted meaning, they cover the accident in this case"); *Washington Group International, Inc. v. Mason Manufacturing, Inc.*, 263 F. Supp. 2d 1115, 1118 (N.D. Ill. 2003) (utilizing Illinois law, rejecting *Karsner*, and finding that "[t]he current contract states that [the indemnitor] will indemnify [the indemnitee] for 'any and all' loss arising from the inspections" and "most cases dealing with similar 'any and all' language have determined that this is sufficient to provide coverage for the indemnitee's own negligence"). *Karsner*'s analysis to the contrary is thus overruled.

Considering the above, we turn to the indemnity agreement at issue in this case. Of crucial importance, the agreement between Frontline and COSCO provides that "[Frontline] shall indemnify [COSCO] against, and hold [COSCO] harmless for any and all claims *** arising out of, [in] connection with, or resulting from the possession, use, operation or returning of the equipment during all periods when the equipment shall be out of the possession of COSCO." This contract contains no limiting language to suggest that the indemnity provided is not intended to cover claims resulting from COSCO's own negligence. Accordingly, we find that the express language of the interchange agreement entered into between Frontline and COSCO clearly and explicitly provides indemnification for COSCO's own negligence pursuant to the rest of the contract terms.

As our appellate court aptly put it in the past, "[t]he words 'any and all' are all inclusive; their conciseness does not limit their scope; their coverage would not have been extended by making them more specific." *Haynes*, 47 Ill. App. 2d at 346. Frontline did not agree to indemnify COSCO for "any and all" claims arising out of Frontline's negligence. Instead, Frontline agreed to indemnify COSCO for "any and all claims *** arising out of *** the possession, use, operation or returning of the equipment during all periods when the equipment shall be out of the possession of COSCO." This agreement is very broad and, considering its common unambiguous meaning, encompasses even claims which arise out of COSCO's negligence.

Again pointing to *Karsner*, Frontline contends that it might contravene public policy to hold, as we do, that a contract can provide indemnification for an indemnitee's own negligence in a circumstance

such as at issue in this case. In *Karsner*, the appellate court noted that the Construction Contract Indemnification for Negligence Act specifically provided that no construction contract shall allow for the indemnification of a person's own negligence because such a provision is " 'void as against public policy and wholly unenforceable.' " *Karsner*, 331 Ill. App. 3d at 477, quoting 740 ILCS 35/1 (West 2000). Additionally, the court pointed to the Managed Care Reform and Patient Rights Act, which provided that no person or health-care provider may be indemnified for its own negligence in the performance of his, her, or its duties. *Karsner*, 331 Ill. App. 3d at 477, citing 215 ILCS 134/95 (West 2000). Based on these statutes, the *Karsner* court found that "in the absence of an express agreement, it is against Illinois public policy to require indemnification for a person's own negligence." *Karsner*, 331 Ill. App. 3d at 477.

Our finding does not contradict public policy, however. As we recognized in *Westinghouse*, when an agreement clearly and explicitly provides indemnification for an indemnitee's own negligence, it should be construed accordingly. *Westinghouse Electric*, 395 Ill. at 433. The agreement at issue in this case is specific and clear enough to provide indemnification for claims arising out of COSCO's negligence. Moreover, while certain statutes specifically prohibit the enforcement of agreements that indemnify an indemnitee for its own negligence, there is no such statute at play in this case. Had the General Assembly wanted to prohibit the enforcement of indemnification agreements that indemnify an indemnitee for its own negligence in circumstances such as these, it could have, just as it has in other situations. See, *e.g.*, 740 ILCS 35/1 (West 2006); 215 ILCS 134/95 (West 2006). The General Assembly chose not to create such a prohibition in such circumstances, however, and we will not judicially create one.


II. The Scope of the Indemnification Clause

Having determined that the agreement at issue in this case is explicit and clear enough to signify the parties' intention that Frontline indemnify COSCO for claims resulting from COSCO's own negligence, we turn to the scope of the agreement. Frontline contends that the negligence claims asserted against COSCO in the underlying litigation do not fall within the scope of the agreement's indemnification clause. In response, COSCO asserts that this issue has

been forfeited, as it was not raised in Frontline's petition for leave to appeal. Notwithstanding forfeiture, COSCO asserts that substantively analyzing the issue reveals that the negligence claims alleged against COSCO do fall within the scope of the indemnification agreement.

While Frontline raised the scope issue in the appellate court, it did not include it in its petition for leave to appeal. Supreme Court Rule 315(c)(3) provides that a petition for leave to appeal must contain "a statement of the points relied upon in asking the Supreme Court to review the judgment of the Appellate Court." 210 Ill. 2d R. 315(c)(3). In its petition for leave to appeal under a "Points Relied Upon For Reversal" heading, Frontline argued that "[t]he Appellate Court erred because it improperly treated the language of the interchange agreement, containing an indemnification provision, as including language which would indemnify defendants/respondents, [COSCO], for claims resulting from COSCO's own negligence." In the very next sentence, Frontline stated that "[t]he issue in this case is whether the language 'any and all' in the interchange agreement is sufficient to indemnify COSCO for their own negligence." Frontline failed to argue in its petition, however, that the negligence claims asserted against COSCO in the underlying litigation do not fall within the scope of the agreement's indemnification clause. This issue was only raised in its brief, which it styled as a "Supplemental Brief to Petition for Leave to Appeal."

A party's failure to raise an issue in its petition for leave to appeal may be deemed a forfeiture of that issue. *Sullivan v. Edward Hospital*, 209 Ill. 2d 100, 124-25 (2004).[2] By failing to raise the scope issue in

---

[2]*Sullivan* expresses the cited rule in terms of waiver. As this court has noted, there is a difference between waiver and forfeiture. While waiver is the voluntary relinquishment of a known right, forfeiture is the failure to timely comply with procedural requirements. *Gallagher v. Lenart*, 226 Ill. 2d 208, 229 (2007); *People v. Blair*, 215 Ill. 2d 427, 444 n.2 (2005). These characterizations apply equally to criminal and civil matters. Thus, while *Sullivan* spoke in terms of waiver, a party's failure to raise an issue in its petition for leave to appeal may equally be deemed a forfeiture of that issue. *People v. McCarty*, 223 Ill. 2d 109, 122 (2006) ("the failure to raise an issue in a petition for leave to appeal results in the forfeiture of that issue before this court").

its petition for leave to appeal, then, Frontline has forfeited that issue in this court. That Frontline later raised the issue in its brief does not cure the forfeiture. Finding the scope issue forfeited, we will not address the issue on the merits.

## CONCLUSION

We find that the interchange agreement entered into between Frontline and COSCO expressly and unambiguously requires Frontline to indemnify COSCO for the negligence that it is alleged to have committed in the underlying litigation. Additionally, we find that Frontline forfeited its argument that the negligence claims alleged against COSCO do not fall within the scope of the indemnification agreement. As such, we affirm the appellate court's judgment affirming the trial court's grant of summary judgment on count IV of COSCO's counterclaim.

*Affirmed.*


CHIEF JUSTICE THOMAS and JUSTICES FREEMAN and KILBRIDE took no part in the consideration or decision of this case.