**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 09-1687

J. KRIST SCHELL,

Plaintiff, Appellee,

v.

THOMAS W. KENT,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. James R. Muirhead, U.S. Magistrate Judge]

Before

Torruella, Circuit Judge,

Souter, Associate Justice,* and Stahl, Circuit Judge.

K. William Clauson, with whom Clauson Atwood & Spaneas was on brief, for appellant.
David A. Strock, with whom Melinda J. Caterine and Fisher & Phillips LLP were on brief, for appellee.

February 3, 2010

---

*The Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**SOUTER, <u>Associate Justice</u>**.  In late 1999, J. Krist Schell and Thomas W. Kent (the appellant here) formed a Nevada corporation, Bradley Reed Lumber, LLC, to import Russian lumber for sale in New England.  Schell originally had a one-third interest, Kent the remainder, and the company soon borrowed a quarter of a million dollars from Edward M. Myslik.  The two owners personally signed the note and a separate guarantee, and Kent agreed to indemnify Schell (consistently with their respective stakes) against any sums he might pay out under the guarantee.

In its early years, the business did poorly, requiring advances (some from Schell), and in 2001, disagreements between the principals prompted Kent to ask Schell to withdraw from operations, as Schell subsequently did.  At least from this point, the conduct of corporate affairs become lackadaisical and remained that way after Myslik agreed with Kent to cancel the debt to him in return for equity.  Over the years, Schell spoke with Kent about recovering his capital and advances to the corporation, but accepted Kent's representations that the company had no funds available to pay him.

Schell remained in the dark about the corporate financial condition until disclosures followed in the wake of two state law actions against him by Myslik to collect under the terms of the note (which Myslik then claimed to be outstanding) and the guarantee.  Each claim was either dismissed (for a reason having

-2-

nothing to do with Myslik's agreement to cancel debt for equity) or settled, but not before Schell had incurred legal expenses. [1]

Schell then sued in federal court on four claims, two against Kent directly for indemnification and breach of oral contract, and two against the company for unjust enrichment and fraud (claiming to reach Kent as well by piercing the corporate veil). The magistrate judge granted Schell's motion for summary judgment on the indemnification counts, and a jury returned a verdict against Kent on the fraud count, having pierced the veil. [2]

Kent's first issue in this appeal is aimed at the summary judgment, by attempting an end run around his own failure to respond to Schell's requests for admission under Federal Rule of Civil Procedure 36, that "[t]he costs, attorney's fees, and expenses incurred by J. Krist Schell" prior to judgment "in defending against Edward Myslik's claims in [the two state court lawsuits] are covered by the indemnification provisions of the Indemnification Agreement, dated February 28, 2000." The

---

[1] Myslik first sued Schell, Kent, and Bradley Reed Lumber in New Hampshire state court, and then instituted a parallel action against Schell alone in Maine, seeking to attach Schell's property there. The Maine court dismissed the case on the basis of a forum selection clause in the guarantee. The New Hampshire court dismissed the guarantee-based claim as barred by the statute of limitations, but held that the note-based claim was allowable. Schell and Kent separately settled that claim with Myslik.

[2] The magistrate judge also entered judgment for Kent on the oral contract and unjust enrichment counts, finding them barred by the relevant statutes of limitations. Those claims are not before us on appeal.

magistrate relied on Kent's admissions by silence, see Fed. Rule Civ. Proc. 36(a)(3), in reaching the conclusion that there was no genuine dispute as to material fact standing in the way of Schell's claim to be indemnified for the burden of defending against Myslik's actions on the guarantee. On de novo review, Pineda v. Toomey, 533 F.3d 50, 53 (1st Cir. 2008), we see no error.

Kent argues that the proposition he admitted merely describes the subject matter, the scope, of possible indemnification, not the application of the indemnification agreement to the particular facts of the actions in the state courts. He says, moreover, that any such application could be triggered only by entry of a judgment of liability on the guarantee, which was actually found to be precluded by the statute of limitations. But these are not sensible readings either of the requests for admission or of the agreement to indemnify.

The requests are specific to the particular outlays claimed to have been made in consequence of the New Hampshire and Maine suits: the expenses said to be covered are described as "the" costs, fees and expenses "incurred" by Schell in defending against "Myslik's claims in" specifically identified lawsuits. These are references to particular items, not to general delineations of scope, and admitting their coverage under the indemnification agreement can only be understood to mean that they are outlays Kent is obliged to pay for.

-4-

Kent likewise misunderstands the terms of indemnification when he argues that a court's judgment of liability is a necessary condition of its application. The agreement covers not only "damages . . . required to be paid" in accordance with an "underlying judgement [or] settlement," but also "costs and expenses . . . sustained [or] incurred . . . in connection with . . . liability resulting from the [g]uarantee." Kent is responsible for such items "whether or not [he] is a party to the underlying judgement, settlement, or other cause" of the payment, which may include "voluntarily paying . . . sums under the [g]uarantee." Kent's position would read the voluntary payment clause right out of the indemnity agreement, and coverage for attendant costs and expenses right along with it, which is enough to say that his interpretation cannot be sound, even under the authority he cites from Illinois,[3] to the effect that indemnity agreements get narrow readings, see Karsner v. Lechters Ill., Inc., 771 N.E.2d 606, 608 (Ill. App. Ct. 2002), overruled on other grounds, Buenz v. Frontline Transp. Co., 882 N.E.2d 525 (Ill. 2008). The magistrate was on firm ground to rest on the admission, and the text of the agreement is consistent with the terms of the summary judgment.

Kent's next assignment of error goes to the district court's denial of both his motion for judgment as a matter of law

---

[3] Whose law was agreed to govern interpretation.

and his motion for new trial in response to the jury's verdict of fraud. Kent had to show, respectively, that no reasonable juror could have so found, <u>Valentín-Almeyda</u> v. <u>Municipality of Aquadilla</u>, 447 F.3d 85, 95-96 (1st Cir. 2006), or that the verdict was against the clear weight of the evidence, <u>id.</u> at 104; in reviewing the trial court's conclusions, respectively, <u>de novo</u> and for abuse of discretion, <u>id.</u> at 95, 103-04, we again see no mistake. The claim of corporate fraud extended to Kent under a count of the complaint seeking to pierce the corporate veil, and here Kent does not except to going behind the corporate form. His position is simply a challenge to the underlying grounds for a fraud verdict consistent with the three-year limitation period: he denies that the jury had an evidentiary basis to find that Kent told Schell that the corporation had no money to repay capital and other contributions, and that (for a time extending into the period allowed for suit) Schell reasonably relied on these representations in refraining from action to compel repayment, whereas in fact Kent made payments to himself from corporate funds, both before and after the Myslik debt was cancelled.[4] Kent addresses this issue principally by rehashing conflicting evidence about the date of the supposedly pivotal event of his agreement with Myslik to cancel the debt in

_____

[4] In the district court, one thrust of Kent's attack on the jury award was directed to Schell's recovery for the amount paid to settle Myslik's claim of personal liability (under the Uniform Commercial Code) for the original corporate debt; here, Kent says nothing specific to that particular item for damages.

return for granting Myslik an equity position. On this matter, the magistrate judge simply disbelieved Kent's version of the facts, and the jury had ample evidence (such as the stated date of agreement) to do the same. The short answer to Kent was accordingly well stated by Schell's counsel: among conflicting items of evidence on which Kent argues that the jury should have found for him there was ample evidence on which the jury did, and was entitled to, see things Schell's way.

The magistrate judge catalogued this latter evidence at exhaustive length in response to Kent's motions. For example, in 2001, Kent sold almost $98,000 in lumber and paid many expenses (including a "Cost of Goods Sold - Other" expense of more than $57,000 and sales commissions), yet paid nothing to Schell; in 2002, Kent sold over $35,000 in inventory and paid himself more than $15,000 (in addition to sales commissions also presumably paid to himself), but made no payments to Schell or Myslik; and in 2003, many assets were sold and Kent received "loan payments" of $19,000 (while Myslik got another $14,400), yet nothing was paid to Schell. We could go on, but the question is not even close and no purpose would be served by duplicating the magistrate judge's exposition.

Kent's argument that any fraud must have occurred outside the limitations period has no merit, for the evidence sufficient for the fraud verdict amply supports a finding that misrepresentations made outside the limitation period were not

reasonably discoverable as false, and were not known to be, until after Myslik filed suit in state court, a time within the period for bringing action.  Nor do we see a point of traction for Kent's argument that any evidence of fraud goes to the time after Schell relinquished his equity position in the corporation and is thus irrelevant because Schell claims to have been defrauded as a member of the company; there is no such metaphysical limitation in Schell's complaint.

**<u>Affirmed</u>**.