# Illinois Official Reports

## Appellate Court

<div style="border:1px solid">

### *Bituminous Casualty Corp. v. Plano Molding Co.*,
### 2015 IL App (2d) 140292

</div>

| | |
|---|---|
| Appellate Court Caption | BITUMINOUS CASUALTY CORPORATION, Plaintiff-Appellant, v. PLANO MOLDING COMPANY, Defendant-Appellee. |
| District & No. | Second District<br>Docket No. 2-14-0292 |
| Filed | March 26, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Kendall County, No. 12-MR-175; the Hon. Robert P. Pilmer, Judge, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | Thomas B. Orlando, Matthew S. Ponzi, and Robert T. Boylan, all of Foran, Glennon, Palandech, Ponzi & Rudloff, P.C., of Chicago, for appellant.<br><br>Christopher T. Sheean, of Swanson, Martin & Bell, LLP, of Chicago, for appellee. |

JUSTICE ZENOFF delivered the judgment of the court, with opinion. Justices Jorgensen and Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, Bituminous Casualty Corporation, appeals from an order granting the cross-motion of defendant, Plano Molding Company, for summary judgment and denying plaintiff's motion for summary judgment. We reverse.

¶ 2                                I. BACKGROUND

¶ 3    Plaintiff is an Illinois insurance company. Defendant is an Illinois corporation with its principal place of business in Plano, Illinois. Defendant designs, manufactures, and sells storage boxes, which are produced from steel injection molds. In 2004, defendant ordered two steel injection molds, which were manufactured in China. World Commerce Services, LLC (World), arranged for shipment of the molds from China to Illinois. World issued a bill of lading identifying defendant as the "consignee." Paragraph 2.3 of the bill of lading defined "merchant" as including the "Shipper, the Receiver, the Consignor, the Consignee, the Holder of the Bill of Lading and any person having a present or future interest in the Goods or any person acting on behalf of any of the above-mentioned parties." Paragraph 10(2) of the bill of lading provided as follows:

> "Merchant warrants that the stowage and seals of the containers are safe and proper and suitable for handling and carriage and indemnifies Carrier for any injury, loss or damage caused by breach of this warranty."

¶ 4    The molds were loaded into a shipping container and transported by sea to California by Kawasaki Kisen Kaisha, Ltd., and "K" Line America, Inc. (collectively K-Line). Union Pacific Railroad Company (Union Pacific) then transported the molds overland by rail. On April 21, 2005, the train derailed in Oklahoma. The derailment was allegedly caused by the molds breaking through the floor of the container and falling onto the tracks below. As a result of the derailment, various cargo owners whose goods were damaged, or their insurers, sued K-Line and Union Pacific for damages. K-Line and Union Pacific then sued defendant in federal district court in Illinois, seeking reimbursement for the claims they settled as well as compensation for damage to K-Line's own shipping containers and damage to Union Pacific's own equipment. Defendant tendered defense of the suit to plaintiff.

¶ 5    Plaintiff insured defendant under a commercial general liability (CGL) policy. Plaintiff defended defendant pursuant to a reservation of rights until the Seventh Circuit Court of Appeals determined that K-Line's and Union Pacific's only causes of action against defendant stemmed from its contractual obligations under the bill of lading. *Kawasaki Kisen Kaisha, Ltd. v. Plano Molding Co.*, 696 F.3d 647, 660 (7th Cir. 2012) (affirming district court's grant of summary judgment as to the plaintiffs' negligence claims but reversing grant of summary judgment as to the plaintiffs' contract claims based on the bill of lading, remanding for disposition of the contract claims). Following that ruling, plaintiff filed the instant declaratory judgment action in the circuit court of Kendall County based upon a policy exclusion that

provided that the insurance does not apply to property damage "for which the insured is obligated to pay damages by reason of the assumption of liability in a contract agreement." Plaintiff filed a motion for summary judgment. Defendant filed a counterclaim for declaratory relief and a cross-motion for summary judgment based upon an exception to the exclusion in the policy for an "insured contract." The policy defines an "insured contract" as:

> "That part of any other contract or agreement pertaining to your business *** under which you assume the tort liability of another party to pay for bodily injury or property damage to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement."

The trial court granted defendant's cross-motion for summary judgment and denied plaintiff's motion for summary judgment. Plaintiff filed a timely appeal.

¶ 6                                    II. ANALYSIS

¶ 7        When parties file cross-motions for summary judgment, they agree that only a question of law is involved and invite the trial court to decide the issues based on the record. *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. However, the mere filing of cross-motions for summary judgment does not establish that there is no issue of material fact, nor does it obligate the court to render summary judgment. *Pielet*, 2012 IL 112064, ¶ 28. Summary judgment should be granted only where the pleadings, depositions, admissions, and affidavits on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue of material fact and that the moving party is clearly entitled to judgment as a matter of law. *Pielet*, 2012 IL 112064, ¶ 29. We review the grant or denial of summary judgment *de novo*. *Pielet*, 2012 IL 112064, ¶ 30.

¶ 8        At issue is the proper construction of paragraph 10(2) of the bill of lading. The primary objective in construing a contract is to give effect to the intent of the parties. *Dearborn Maple Venture, LLC v. SCI Illinois Services, Inc.*, 2012 IL App (1st) 103513, ¶ 31. The plain and ordinary meaning of the language used in the contract is the best indication of the parties' intent. *Dearborn*, 2012 IL App (1st) 103513, ¶ 31. An indemnity agreement is a contract subject to contract interpretation rules. *Buenz v. Frontline Transportation Co.*, 227 Ill. 2d 302, 308 (2008). It is well settled that indemnity contracts are strictly construed and will not be construed as indemnifying against a party's own negligence unless such a construction is required by the clear and explicit language of the contract. *McNiff v. Millard Maintenance Service Co.*, 303 Ill. App. 3d 1074, 1077 (1999). We also review the interpretation of a contract *de novo*. *Asset Recovery Contracting, LLC v. Walsh Construction Co. of Illinois*, 2012 IL App (1st) 101226, ¶ 57.

¶ 9        The parties agree on a number of things. They agree that the bill of lading is a contract. See *Kawasaki*, 696 F.3d at 652 (a bill of lading can serve as evidence of a contract of carriage). Defendant agrees that "any liability that [it] [owes] to K-Line or Union Pacific *** emanates from the warranties set forth in the World Bill of Lading." The parties, therefore, agree that the CGL policy's contractual liability exclusion applies. That provision excludes coverage for property damage "for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement."

¶ 10       However, the parties disagree whether the CGL policy's exception to the exclusion for insured contracts applies. Defendant contends that the bill of lading is an insured contract

because K-Line and Union Pacific are seeking indemnification for tort losses they sustained. In other words, defendant focuses on K-Line's and Union Pacific's liability to the other parties in the underlying lawsuits. To the contrary, plaintiff contends that the bill of lading is not an insured contract, because defendant is liable only for its own breach of warranty; it has not assumed liability for K-Line's and Union Pacific's negligence.

¶ 11 *Virginia Surety Co. v. Northern Insurance Co. of New York*, 224 Ill. 2d 550 (2007), is dispositive. However, before we reach our discussion of *Virginia Surety*, we must look at two divergent lines of appellate court cases that it resolved. In *Hankins v. Pekin Insurance Co.*, 305 Ill. App. 3d 1088 (1999), the Fifth District of the Appellate Court examined an agreement between Hankins, who agreed to provide a shipping and receiving terminal, and Rudolf Express Company, which was permitted to use the terminal to deliver and pick up loads of materials. *Hankins*, 305 Ill. App. 3d at 1089. The parties' agreement included a hold-harmless clause in which Hankins agreed to indemnify and hold harmless Rudolf for all claims " 'caused in whole or in part' " by Hankins' negligence. *Hankins*, 305 Ill. App. 3d at 1089-90. While this agreement was in effect, one of Hankins' employees was injured unloading Rudolf's truck and sued Rudolf. *Hankins*, 305 Ill. App. 3d at 1089. Rudolf filed a third-party complaint against Hankins, seeking indemnification and damages based in part on the agreement. *Hankins*, 305 Ill. App. 3d at 1089. Hankins tendered the defense to Pekin under Hankins' CGL policy, which contained a contractual liability exclusion and an exception for an insured contract identical to the policy language in our case. *Hankins*, 305 Ill. App. 3d at 1089-90. Pekin refused the tender as to the counts related to the indemnity and hold-harmless agreement, and argued that the contractual liability exclusion applied. *Hankins*, 305 Ill. App. 3d at 1091. The trial court granted judgment on the pleadings in favor of Hankins, ruling that the agreement was an insured contract under the Pekin policy, even though the agreement did not explicitly say that Hankins would be responsible for Rudolf's negligence. *Hankins*, 305 Ill. App. 3d at 1091. The appellate court reversed. *Hankins*, 305 Ill. App. 3d at 1094. The appellate court held that the indemnity and hold-harmless agreement limited "Hankins' liability to [his] own negligence and does not extend to the negligence of Rudolf." *Hankins*, 305 Ill. App. 3d at 1093. The appellate court expressed that the language in an insured contract must "clearly, explicitly, and unequivocally" reflect the parties' intention that the indemnitor will indemnify the indemnitee against the indemnitee's own negligence. *Hankins*, 305 Ill. App. 3d at 1093.

¶ 12 This court disagreed with *Hankins* in *Michael Nicholas, Inc. v. Royal Insurance Co. of America*, 321 Ill. App. 3d 909 (2001). In *Michael Nicholas*, which involved a construction subcontract agreement between the plaintiff and a developer, the plaintiff agreed to indemnify and hold harmless the developer from all claims attributable in whole or part to the plaintiff's negligence. *Michael Nicholas*, 321 Ill. App. 3d at 911. One of the plaintiff's employees was injured and sued the developer, alleging violations of the Structural Work Act (740 ILCS 150/0.01 *et seq.* (West 1994) (repealed by Pub. Act 89-2, § 5 (eff. Feb. 14, 1995))). *Michael Nicholas*, 321 Ill. App. 3d at 911. The developer sued the plaintiff, seeking either complete indemnification or contribution based on its agreement with the plaintiff. *Michael Nicholas*, 321 Ill. App. 3d at 911. The plaintiff tendered the suit to the defendant, its insurer under a CGL policy that contained an exclusion for contractual liability and an exception to the exclusion for insured contracts. *Michael Nicholas*, 321 Ill. App. 3d at 911-12. When the defendant denied coverage, the plaintiff filed a declaratory judgment action. *Michael Nicholas*, 321 Ill. App. 3d at 911. The defendant moved to dismiss the complaint based on the policy exclusion, and the

trial court granted the motion, relying on *Hankins*. *Michael Nicholas*, 321 Ill. App. 3d at 911. This court reversed and remanded the matter, holding that *Hankins*' equation of "tort liability," as used in the policy definition of "insured contract," with "negligence" was too narrow, as "tort liability" could encompass something other than negligence, such as joint and several liability. *Michael Nicholas*, 321 Ill. App. 3d at 914. This court held that, because the plaintiff had waived the right to limit its exposure to what it paid its employee as worker's compensation (the *Kotecki* cap (*Kotecki v. Cyclops Welding Corp.*, 146 Ill. 2d 155, 165 (1991))), it was potentially jointly and severally liable for the entire amount that the developer was required to pay to the injured employee. *Michael Nicholas*, 321 Ill. App. 3d at 914.

¶ 13     This court reaffirmed the principle of *Michael Nicholas* in *West Bend Mutual Insurance Co. v. Mulligan Masonry Co.*, 337 Ill. App. 3d 698 (2003). *West Bend* presented the same factual scenario and identical policy language as *Michael Nicholas*. *West Bend*, 337 Ill. App. 3d at 704. Justice McLaren dissented on the basis that *Michael Nicholas* and the majority in *West Bend* "ignore the distinction between those matters that are imposed by law and those that have been assumed by the insured through the indemnification contract." *West Bend*, 337 Ill. App. 3d at 709 (McLaren, J., dissenting). Justice McLaren pointed out that "[j]oint and several liability is not assumed by a tortfeasor," and because it is imposed rather than assumed, it was "neither contained in nor contemplated" by the indemnification agreement or the insurance contract. *West Bend*, 337 Ill. App. 3d at 709 (McLaren, J., dissenting). Justice McLaren agreed with *Hankins* that an indemnification agreement must state that "any liability attached to the other party has been assumed by the insured." *West Bend*, 337 Ill. App. 3d at 712 (McLaren, J., dissenting).

¶ 14     In *Virginia Surety*, our supreme court overruled *Michael Nicholas* and *West Bend*. *Virginia Surety*, 224 Ill. 2d at 570. The issue in *Virginia Surety* was whether a construction subcontract agreement was an insured contract. In the subcontract agreement, the subcontractor agreed to indemnify and hold harmless the owner, the general contractor, the architect, and their respective agents and employees from damages arising out of the subcontractor's negligence. *Virginia Surety*, 224 Ill. 2d at 553. One of the subcontractor's employees was injured on the job and sued the general contractor. *Virginia Surety*, 224 Ill. 2d at 553-54. The general contractor filed a third-party suit against the subcontractor, which was insured by both the plaintiff and the defendant. *Virginia Surety*, 224 Ill. 2d at 553-54. The plaintiff defended the subcontractor, but the defendant refused the tender. *Virginia Surety*, 224 Ill. 2d at 554. The plaintiff then filed a declaratory judgment action against the defendant, alleging that the subcontract agreement with the general contractor was an insured contract within the meaning of the defendant's policy. *Virginia Surety*, 224 Ill. 2d at 554.

¶ 15     Our supreme court engaged in a long analysis devoted to the interplay between contribution and indemnification, which is not relevant for our purposes. *Virginia Surety*, 224 Ill. 2d at 556-64. However, the result of the discussion was that our supreme court agreed with *Hankins* that a contract in which the insured agrees to indemnify against the insured's own negligence is not an insured contract. *Virginia Surety*, 224 Ill. 2d at 565 (court said that it must look to the agreement and determine whether the agreement obligated the subcontractor to assume the general contractor's liability). In looking at the subcontract agreement, the court said that it was "unambiguous." *Virginia Surety*, 224 Ill. 2d at 565. "By the plain language of the agreement, [the subcontractor], as the indemnifying party, is required to 'indemnify' [the

general contractor] only for [the subcontractor's] own negligence." *Virginia Surety*, 224 Ill. 2d at 565.

¶ 16 Here, defendant attempts without success to distinguish *Virginia Surety*. Defendant argues that "tort liability," as used in the policy definition of "insured contract," can mean tort-liability-as-imposed-by-law, rather than negligence. Defendant ignores that *Virginia Surety* overruled *Michael Nicholas* and *West Bend* on that very point. This court said in those cases that "tort liability" for purposes of an insured contract could mean joint and several liability, which is imposed by law. *Michael Nicholas*, 321 Ill. App. 3d at 914; *West Bend*, 337 Ill. App. 3d at 705-06. Justice McLaren dissented in *West Bend*, opining that an insured contract is one in which the tortfeasor's liability is assumed, rather than imposed by law. *West Bend*, 337 Ill. App. 3d at 709 (McLaren, J., dissenting). Justice McLaren's view prevailed with our supreme court. *Virginia Surety*, 224 Ill. 2d at 565. In *Virginia Surety*, our supreme court made it clear that courts are to look at the language of the agreement, and where it unambiguously provides that the indemnifying party is required to indemnify only for its own negligence, the agreement is not an insured contract. *Virginia Surety*, 224 Ill. 2d at 565.

¶ 17 Defendant maintains that *Virginia Surety* and *Hankins* are limited to their facts and that we are not bound to follow *Virginia Surety*. However, nothing in the supreme court's language in *Virginia Surety* indicated that it was limited to its facts. While *Virginia Surety* involved an issue that is not present in our case–the indemnitee's right of contribution–that distinction does not negate *Virginia Surety*'s applicability to our scenario. The indemnification agreement in *Virginia Surety* provided that the subcontractor would indemnify the general contractor for losses caused by the subcontractor's own negligence, despite any common liability imposed by law. *Virginia Surety*, 224 Ill. 2d at 565. Similarly, *Hankins* involved the indemnitee's right of contribution. *Hankins*, 305 Ill. App. 3d at 1089. However, the court determined whether the contract was an insured contract under the defendant's policy solely by looking at the contract's language, not considering any common liability imposed by law. *Hankins*, 305 Ill. App. 3d at 1093. Moreover, our supreme court discussed *Hankins* in *Buenz* without indicating that *Hankins* was limited to its facts. *Buenz*, 227 Ill. 2d at 315-16. Therefore, *Virginia Surety* controls, and defendant's citation to the dissent in *People v. Trimarco*, 364 Ill. App. 3d 549, 556 (2006), as to the proper application of *stare decisis*, is misplaced. Accordingly, we now turn to the language of the bill of lading at issue in this case.

¶ 18 Paragraph 10(2) of the bill of lading provided that "Merchant"–meaning defendant–agreed to indemnify "Carrier"–meaning K-Line and Union Pacific–"for any injury, loss or damage caused by breach of this warranty." The language of the agreement unequivocally states that defendant warranted that the stowage and seals of the containers were safe and proper and suitable for handling and carriage. Therefore, defendant agreed to indemnify K-Line and Union Pacific for defendant's breach of those warranties. The agreement says nothing about indemnifying K-Line and Union Pacific against their own negligence. It is generally held that an indemnity contract will not be construed as indemnifying the indemnitee against its own negligence unless such a construction is required by the clear and explicit language of the contract, or such intention is expressed in unequivocal terms. *Buenz*, 227 Ill. 2d at 316; *Westinghouse Electric Elevator Co. v. LaSalle Monroe Building Corp.*, 395 Ill. 429, 433 (1947) ("It is quite generally held that an indemnity contract will not be construed as indemnifying one against his own negligence, unless such a construction is required by clear and explicit language of the contract ***.").

¶ 19 Defendant improperly focuses on the words "any injury, loss or damage" without regard to their context. See *Buenz*, 227 Ill. 2d at 316-17 (it is not simply the use of the phrase "any and all" that determines whether a contract provides indemnification for an indemnitee's own negligence, but the phrase must be read in the context of the entire contract). In *Buenz*, our supreme court looked at the limiting language in the agreement in *Hankins*, among other cases, to determine whether the indemnity contract at issue covered the indemnitee's negligence. *Buenz*, 227 Ill. 2d at 312-16. By "limiting language," the supreme court meant phraseology that specifically limits indemnification to the indemnitor's actions. *Buenz*, 227 Ill. 2d at 313. For instance, the court noted that in *Hankins* the agreement expressly restricted indemnification liability to negligence occasioned by the indemnitor. *Buenz*, 227 Ill. 2d at 315-16. In contrast, the agreement in *Buenz* contained no such limiting language. *Buenz*, 227 Ill. 2d at 317-18.

¶ 20 Here, the language in the bill of lading is clear and unambiguous. It clearly was the intention of the parties to the contract that defendant's indemnification liability would be restricted to its breach of the warranties contained in the contract. Consequently, under *Virginia* S*urety*, the contract is not an insured contract, and summary judgment should have been granted in plaintiff's favor. Accordingly, we reverse the grant of summary judgment in favor of defendant and enter summary judgment in favor of plaintiff.

¶ 21 Reversed.