JUNE DAYMON, Plaintiff-Appellant, v. HARDIN COUNTY GENERAL HOSPITAL, Defendant-Appellee.

Fifth District   No. 5—89—0839

Opinion filed March 26, 1991.

928

GOLDENHERSH, J., dissenting.

Douglas N. Dorris, of Harris & Lambert, of Marion, for appellant.

Donald V. Ferrell, of Jelliffe, Ferrell & Morris, of Harrisburg, for appellee.

JUSTICE LEWIS delivered the opinion of the court:

The plaintiff, June Daymon, sought to recover damages for past and future lost earnings and fringe benefits as a consequence of her "wrongful discharge" by the defendant, Hardin County General Hospital. Central to this dispute is the defendant's handbook, "Personnel Policies and Procedures," a copy of which is attached to and made a part of plaintiff's complaint. In a "motion attacking the complaint," the defendant urged that the plaintiff was an employee terminable at will by virtue of a contract disclaimer with which the handbook concludes. The disclaimer states:

"This handbook is not intended to create any sort of contract of employment. Rather, it is simply intended to generally describe Hardin County General Hospital and its present policies and procedures. These policies and procedures will be revised at least every two years or as the governing board deems necessary."

As requested by the defendant, the trial court entered judgment on the pleadings in favor of the defendant and against the plaintiff. The plaintiff appeals.

In her complaint the plaintiff, a nurse, alleged that on September 21, 1988, defendant discharged her

"by written notice for the stated reason that 'you left your work station on a shift you were scheduled to work on 09-16-88', citing the policy on Page 4 of the Personnel Policies and Procedures handbook dated April 1, 1988, which states, 'You are expected to be at your assigned job punctually at the starting time and to remain in your job until your proper quitting time, unless a bonafide [sic] emergency arises. Failure to do so is an automatic reason for dismissal.' "

Attached to and made a part of the complaint is a copy of the notice of discharge plaintiff received from the defendant's administrator:

"This document is to serve as your official notice of discharge from employment at Hardin County General Hospital. The rea-

son for discharge is that you left your work station on a shift you were scheduled to work on 09-16-88. The Personnel Policies and Procedures dated April 1, 1988[,] and in effect at this time state that 'You are expected to be at your assigned job punctually at the starting time and to remain in your job until your proper quitting time, unless a bonafide [*sic*] emergency arises. Failure to do so is an automatic reason for dismissal.' "

The plaintiff alleged that, during the course of her employment, the custom and practice of the defendant and its employees "was to regard and to rely upon this Personnel Policies and Procedures handbook as setting forth the conditions and terms of employment." The plaintiff alleges that the defendant's discharge of her was "without just cause and in violation of the policies and procedures set forth" in the handbook. In her complaint she cited certain provisions of the handbook concerning absenteeism by employees, record of written warning to employees, and termination and discharge of employees.

■■ ■ Under Illinois law a written or oral employment contract that does not specify the term of employment creates an employment that endures at the will of the parties and is terminable by either the employer or the employee at any time without cause, subject only to independent contractual or statutory provisions. (*Hogge v. Champion Laboratories, Inc.* (1989), 190 Ill. App. 3d 620, 546 N.E.2d 1025.) In Illinois an employment relationship at will can be terminated for " 'a good reason, a bad reason, or no reason at all.' " (*Criscione v. Sears, Roebuck & Co.* (1978), 66 Ill. App. 3d 664, 669-70, 384 N.E.2d 91, 95, quoting *Loucks v. Star City Glass Co.* (7th Cir. 1977), 551 F.2d 745, 747.) Where an employee is hired for an unspecified period of time, a presumption arises that the employee's status is that of an employee at will; that presumption, however, can be rebutted by a showing that the parties contracted otherwise. *Duldulao v. Saint Mary of Nazareth Hospital Center* (1987), 115 Ill. 2d 482, 505 N.E.2d 314; *Hogge,* 190 Ill. App. 3d 620, 546 N.E.2d 1025.

■ In *Duldulao* the supreme court held that an employee handbook or other policy statement creates enforceable contractual rights if the traditional requirements for contractual formation are present.

"First, the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made. Second, the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer. Third, the employee must accept the offer by commencing or continuing to work after learning of the policy

statement. When these conditions are present, then the employee's continued work constitutes consideration for the promises contained in the statement, and under traditional principles a valid contract is formed." (*Duldulao*, 115 Ill. 2d at 490, 505 N.E.2d at 318.)

All three conditions set forth in *Duldulao* must be present to create enforceable contract rights. *Koch v. Illinois Power Co.* (1988), 175 Ill. App. 3d 248, 529 N.E.2d 281.

■ The handbook in *Duldulao* did not contain a disclaimer. Although a contract claim may be difficult to maintain when the employee handbook expressly provides that the employee relationship is at will, a manual of personnel policies and procedures can create enforceable contractual rights despite the presence of a disclaimer. (*Perman v. ArcVentures, Inc.* (1990), 196 Ill. App. 3d 758, 554 N.E.2d 982.) In *Perman* the court held that as a matter of law the plaintiff's employment could not be terminated at will insofar as the manual provided for an established grievance procedure for an unfavorable decision affecting employment. The handbook in *Perman* contained the following introductory statements:

" 'The Personnel Policies and Procedures which follow, and which may be modified from time to time by the Medical Center, are meant to provide managers and supervisors with guidance as to how the above-discussed employee relations policy of the Medical Center should be implemented. The Personnel Policies and Procedures do not constitute, modify, or otherwise alter the terms and conditions of employment of any Medical Center employee, do not limit or restrict the right of management to terminate or otherwise discipline any Medical Center Employee, and do not constitute an employment contract with any Medical Center Employer.' " *Perman*, 196 Ill. App. 3d at 762, 554 N.E.2d at 985.

In *Bennett v. Evanston Hospital* (1989), 184 Ill. App. 3d 1030, 1031, 540 N.E.2d 979, 980, the employee handbook there contained a disclaimer stating that the Hospital's Employee Handbook " 'is not intended to create a contract of employment.' " (Emphasis omitted.) The handbook in *Bennett* contained no provision requiring just cause as a basis for dismissal. On review the court determined that no contract could exist and that the trial court, having so found, properly dismissed the cause of action.

In *Hogge* the handbook in question concluded with the following statements:

" 'This handbook serves only to outline Champion's major employment policies. It is not intended, and shall not be considered all inclusive or construed as an employment contract. This handbook reflects the company policy at the time of publication. The Company, of course, may improve or change these policies and reserves the right to do so at any time.' " (*Hogge*, 190 Ill. App. 3d at 623, 546 N.E.2d at 1027.)

The handbook in *Hogge* stated further that the 10 reasons listed under major offenses pertaining to disciplinary action up to and including discharge were " 'by way of illustration and [were] not to be deemed to exclude management's right to discharge employees for any other reason.' " (*Hogge*, 190 Ill. App. 3d at 622, 546 N.E.2d at 1027.) We concluded in *Hogge* that such a statement could not reasonably suggest that an employee could be discharged only for engaging in conduct described and proscribed by one of the 10 items enumerated therein.

The question of the existence of a contract is a matter of law for determination by the court. (*Bennett*, 184 Ill. App. 3d 1030, 540 N.E.2d 979.) The court determines the meaning of contractual terms as a matter of law. (*Trustees of Schools of Township 42, Cook County v. Schroeder* (1971), 2 Ill. App. 3d 1009, 278 N.E.2d 431.) A motion for judgment on the pleadings is a type of motion "with respect to pleadings" as provided for by section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—615), subsection (e) of which states that "[a]ny party may seasonably move for judgment on the pleadings." Such a motion raises the issue of the sufficiency of the pleadings. (*Baillon v. S.S. Kresge Co.* (1972), 4 Ill. App. 3d 82, 277 N.E.2d 719.) Upon consideration of a motion for judgment on the pleadings, the court is to ascertain whether there is an issue of material fact presented by the pleadings, and if there is no such issue, the question is which party is entitled to judgment. (*Baillon*, 4 Ill. App. 3d 82, 277 N.E.2d 719.) The only matter to be considered in ruling on such a motion is the allegations of the pleadings. (*Seefeldt v. Millikin National Bank* (1985), 137 Ill. App. 3d 841, 485 N.E.2d 30.) The question thus presented is whether those pleadings construed most strongly against the movant nevertheless show that there is no factual issue which, if determined against the movant, would prevent entry of judgment on behalf of the movant. *Seefeldt*, 137 Ill. App. 3d 841, 485 N.E.2d 30.

A copy of the handbook dated April 1, 1988, having been attached to and made a part of the complaint by reference, we examine it. As the plaintiff alleged, the handbook provides concerning "WORK

SCHEDULES," "You are expected to be at your assigned job PUNCTUALLY at the starting time and to remain in your job until your proper quitting time, unless a bonafide [sic] emergency arises. Failure to do so is an automatic reason for dismissal." With regard to "ABSENCE," the handbook provides in part, "You are requested to notify your supervisor at least eight hours prior to an absence so that arrangements can be made for someone to cover your position during your absence. Excessive or continued absenteeism or failure to notify your supervisor on the first day of absence will be considered just cause for dismissal." With respect to "TERMINATION AND DISCHARGE," the handbook provides as follows:

"Upon termination of employment if the employee gives proper two-week written notice of resignation, the accrued vacation days and personal days will be paid on the next regular pay day at straight time at base rate. If the employee fails to give proper notice or is discharged for just cause, they [sic] forfeit their accrued personal days. No severance pay other than accrued days (listed above) will be paid any employee upon termination. Some of the reasons for discharge are:

\* \* \*

10. Missing consecutive scheduled working days without the required notice to the supervisor (considered voluntary termination).

\* \* \*

21. Other situations which the Administrator deems serious enough for immediate dismissal."

Concerning "GRIEVANCES" the handbook provides as follows:

"1. DEFINITION OF A GRIEVANCE—
A grievance shall be considered to be any complaint or dissatisfaction arising from an interpretation, application, or claimed violation of any provisions of hospital policies, rules, or regulations and may be submitted to arbitration in the following manner:

A. The supervisor should attempt to anticipate and prevent causes of grievances. Employees, however, have the right to seek assistance in solving on-the-job problems via the following procedure:

1. Any employee with a grievance should discuss the grievance ORALLY with his/her immediate supervisor. If the grievance is not satisfied, the employee should give his supervisor WRITTEN notice within five (5) days (the term 'day' means his/her working days—Monday through Sunday),

that he/she is appealing to the Administrator. This appeal must be clearly stated, dated and signed by the employee. The Administrator will then meet with the employee within six (6) days of the receipt of the appeal. The Administrator must, in turn, give a written answer to the employee's grievance within ten (10) days of the meeting with the employee. The answer, also, must be clearly stated, dated, and signed. If the grievance is still unresolved, it may be submitted to the Board of Directors upon the employee's written notification to the Administrator that he or she desires this step be taken. This notice must be made within five (5) days after receipt of the Administrator's written answer to the grievance. This, also, must be clearly stated, dated, and signed."

■■ ■ Like the handbook in *Bennett*, the instant one contains no provision, express or implied, requiring just cause as a basis for dismissal. Although a grievance procedure is set forth, it is not clear that this procedure, relating to assistance for employees in solving "on-the-job problems," applies to matters relating to termination and discharge. This grievance procedure differs from the one provided in the handbook in *Perman* as the means of pursuing the "right of appeal" of an employee "from an unfavorable decision affecting his employment." (*Perman*, 196 Ill. App. 3d at 762-63, 554 N.E.2d at 985.) In addition, as in *Hogge*, the actions calling for disciplinary action that are set forth in the handbook under "TERMINATION AND DISCHARGE" are commonsense enumerations of actions any reasonable at-will employee in such a setting would understand generally to call for disciplinary action. Furthermore, the provisions relating to termination and discharge might be construed to mean that an employee who gives proper notice of resignation or is terminated without just cause does not forfeit his or her accrued personal days. Although the employer has indicated in its official notice of discharge to the plaintiff that she has been discharged for just cause, we think that, quite apart from any considerations posed by the presence of the disclaimer, the language of the handbook does not contain a promise clear enough that an employee would reasonably believe an offer has been made not to discharge him or her except for just cause. Since the first of the three requirements for contractual formation set forth in *Duldulao* is absent here, the instant employee handbook does not create enforceable contractual rights, and the trial court properly entered judgment on the pleadings in favor of the defendant and against the plaintiff.

We note that the plaintiff does not plead that the terms of the alleged contract, as set forth in the handbook, were altered by subsequent oral agreement to prohibit termination for other than just cause.

Affirmed.

HOWERTON, J., concurs.

JUSTICE GOLDENHERSH, dissenting:
I respectfully dissent.

The majority opinion accurately states the law applicable to this situation, but in my opinion erroneously affirms the trial court in its misapplication of the law. When one reviews the majority's opinion and compares the disclaimer of contract in the instant case with that in *Perman v. ArcVentures, Inc.* (1990), 196 Ill. App. 3d 758, 554 N.E.2d 982, cited by the majority, one finds that the disclaimer in the *Perman* case was much stronger, yet enforceable contractual rights concerning discharge procedures were found. The majority opinion also notes ambiguity in the application of grievance procedures in resolving termination and discharge matters, stating, "[a]lthough a grievance procedure is set forth, it is not clear that this procedure, relating to assistance for employees in solving 'on-the-job problems,' applies to matters relating to termination and discharge." (210 Ill. App. 3d at 934.) Applying the well-settled rule that an ambiguity will be resolved against the drafter of the instrument, in this case the hospital which unquestionably is in a superior bargaining position, and further given the disclaimer that does not reach the *Perman* standard and the ambiguity noted above, I believe that this matter was erroneously decided. Since all three requirements of *Duldulao* are present here, this cause should be reversed and remanded to the trial court for further proceedings.