LOUIS C. HANKINS, d/b/a Louie's Cartage Company, Plaintiff and Counterdefendant-Appellee, v. PEKIN INSURANCE COMPANY, Defendant and Counterplaintiff-Appellant (Rudolf Express Company, Defendant and Counterdefendant-Appellee).

Fifth District    No. 5—98—0028

Opinion filed July 14, 1999.

Robert Marc Chemers and David N. Larson, both of Pretzel & Stouffer, Chartered, of Chicago, for appellant.

Karen L. Kendall and Craig L. Unrath, both of Heyl, Royster, Voelker & Allen, of Peoria, and John D. Flodstrom and Keith E. Fruehling, both of Urbana, for appellees.

JUSTICE WELCH delivered the opinion of the court:

This is a declaratory judgment action brought by Louis Hankins, doing business as Louie's Cartage Company (Hankins), against its insurer, Pekin Insurance Company (Pekin), to determine a question of coverage. The circuit court of Effingham County determined, in a judgment on the pleadings, that coverage was provided by the Pekin policy and that Pekin had a duty to defend Hankins against a suit brought against it by Rudolf Express Company (Rudolf).

Hankins operates a trucking terminal in Effingham County. Hankins had entered into an "Independent Cartage Operator Agreement" (Agreement) with Rudolf Express Company, a motor freight carrier. Under the terms of this Agreement, Hankins agreed to provide a shipping and receiving terminal that Rudolf, a transportation company, was permitted to use to deliver and pick up loads of materials. Jerry Ervin was an employee of Hankins. While Ervin, in the employ of Hankins, was unloading a truck owned by Rudolf, an employee of Rudolf moved the truck away from the loading dock, causing Ervin's forklift to fall to the ground, injuring Ervin. Ervin sued Rudolf to recover for his injuries.

Rudolf filed a third-party complaint against Hankins, seeking contribution, indemnification, and damages for breach of contract, based in part on the Agreement. Hankins tendered the defense of this third-party complaint to its insurer, Pekin Insurance Company (Pekin). Pekin accepted the tender as to count I but refused the tender as to counts II and III. Count I was later severed from counts II and III, and only issues with respect to these latter two counts are before this court on appeal. The action by Ervin against Rudolf was settled for $100,000.

In its amended count II against Hankins, Rudolf seeks express contractual indemnification based upon the Agreement. Paragraph 11(a) of that agreement provides as follows:

> "(a) *Hold Harmless*. CARTAGE OPERATOR agrees to indemnify and hold harmless CARRIER from and against all claims, damages, losses[,] and expenses, including reasonable attorney's fees which might arise out of the performance of any work to be performed hereunder by CARTAGE OPERATOR, including all damages for bodily injury, illness, death, property damage[,] and cargo loss, caused in whole or in part by CARTAGE OPERATOR'S negligent act or omission [or] non[ ]compliance with any part of this contract

or that of anyone employed by CARTAGE OPERATOR or for whose acts CARTAGE OPERATOR may be liable."

In count II of its third-party complaint against Hankins, Rudolf alleges that the negligent conduct of Hankins or its employee contributed in whole or in part to Ervin's claimed injuries and that the claim brought by Ervin against Rudolf met the requirements of paragraph 11(a) because it involved a claim for injury that was caused in whole or in part by the negligence of Hankins. Count II sought indemnification under that paragraph for legal fees and expenses incurred by Rudolf in defending and settling the suit brought by Ervin against Rudolf.

In its amended count III against Hankins, Rudolf seeks damages for breach of the Agreement. Paragraph 11(b) of that agreement required that Hankins procure commercial liability insurance with policy limits of $1 million and that Rudolf be named as an additional insured on that policy. Count III alleges that Hankins failed to obtain the required insurance, forcing Rudolf to tender its defense in the Ervin lawsuit to its own insurance carrier, resulting in damage to Rudolf.

We turn now to the policy of insurance and, specifically, the exclusion that Pekin argues applies to exclude coverage of count II of the amended third-party complaint. This provision of the policy excludes most liabilities contractually assumed by the insured:

> "This insurance does not apply to:
> ***
> b. 'Bodily injury' or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement."

However, according to the policy:

> "This exclusion does not apply to liability for damages:
> (1) Assumed in a contract or agreement that is an 'insured contract,' provided the 'bodily injury' or 'property damage' occurs subsequent to the execution of the contract or agreement."

The term "insured contract," as used in the exception to the assumed-liability exclusion above, is defined in the Pekin policy as follows, in pertinent part:

> "That part of any other contract or agreement pertaining to your business *** under which you assume the tort liability of another to pay damages because of 'bodily injury' or 'property damage' to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement ***."

On March 26, 1997, Hankins filed this declaratory judgment action against Pekin, alleging that Pekin had breached its obligations

and duties under the policy of insurance by denying coverage and refusing to provide a defense for Hankins. Hankins sought judgment against Pekin. On April 18, 1997, Pekin answered Hankins' complaint for declaratory judgment and filed its own counterclaim for declaratory judgment, contending it had no duty or obligation to defend Hankins in the underlying action because the claim in count II falls within an exclusion to the policy and the claim in count III, for breach of contract, is not covered by the policy.

On June 13, 1997, Pekin filed a motion for a judgment on the pleadings, pursuant to section 2—615 of the Illinois Code of Civil Procedure (735 ILCS 5/2—615 (West 1992)). A hearing was held on the motion, and on September 19, 1997, the circuit court of Effingham County entered a judgment on the pleadings in favor of Hankins. The trial court found that although the Agreement did not explicitly and unequivocally express an intention that Hankins would be responsible for Rudolf's negligence, it did provide that Hankins would indemnify Rudolf for *all* losses suffered by Rudolf as a result of Hankins' negligence. Because the complaint alleged that the negligence of Hankins was at least in part the cause of Ervin's injuries, Hankins potentially could be liable for *all* of Rudolf's damages, including those due to Rudolf's own negligence. Thus, paragraph 11(a) did constitute an "insured contract," and Pekin was obligated to defend Hankins against count II of Rudolf's third-party complaint. The duty to defend Hankins against count III followed from the duty to defend against count II. The court expressly indicated that it was not ruling on Pekin's duty to indemnify, which could not be determined until after a trial on the third-party complaint. Pekin appeals.

■ A motion for a judgment on the pleadings raises the issue of the sufficiency of the pleadings. See *Daymon v. Hardin County General Hospital*, 210 Ill. App. 3d 927, 932 (1991). Upon the consideration of a motion for a judgment on the pleadings, the court is to ascertain whether there is any issue of material fact presented by the pleadings, and if there is no such issue, the question is which party is entitled to a judgment as a matter of law. See *Daymon*, 210 Ill. App. 3d at 932. The only matters to be considered in ruling on such a motion are the allegations of the pleadings. See *Daymon*, 210 Ill. App. 3d at 932. A judgment on the pleadings is only appropriate when an examination of the pleadings discloses the absence of any material fact and the rights of the parties can be declared as a matter of law. See *Richco Plastic Co. v. IMS Co.*, 288 Ill. App. 3d 782, 786 (1997). The parties in the instant case do not dispute that a judgment on the pleadings was proper here; they only dispute in whose favor it should have been granted.

This declaratory judgment action calls for the interpretation of an insurance policy and the construction of the Agreement, both questions of law. See *Mank v. West American Insurance Co.*, 249 Ill. App. 3d 827, 830 (1993). As such, we may review the issues independently of the trial court's finding. See *Mank*, 249 Ill. App. 3d at 830.

■ To determine whether the insurer had a duty to defend the insured, the court must look to the allegations in the underlying complaint and compare these allegations to the relevant provisions of the insurance policy. See *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 107-08 (1992). If the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage, the insurer's duty to defend arises. See *Outboard Marine Corp.*, 154 Ill. 2d at 108. A refusal to defend is unjustifiable unless it is clear from the face of the underlying complaint that the facts alleged do not fall potentially within the policy's coverage. See *Outboard Marine Corp.*, 154 Ill. 2d at 108. The duty to defend is broader than the duty to indemnify; the duty to indemnify arises only if the facts alleged in the complaint *actually* fall within coverage. See *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 398 (1993).

Pekin argues on appeal that the liability alleged in count II of the amended third-party complaint is for bodily injury "for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement," that is, paragraph 11(a) of the Agreement, thus falling within the exclusion from coverage set forth above. Pekin argues that Hankins is required to pay damages assessed against Rudolf only because Hankins agreed to do so in paragraph 11(a) of the Agreement.

Pekin further argues that paragraph 11(a) of the Agreement is not an "insured contract" within the meaning of the insurance policy because it is a contribution agreement and not a true indemnity agreement. Pekin argues that paragraph 11(a) of the Agreement is not an "insured contract" because it does not provide for Hankins to assume the liability of another, *i.e.*, Rudolf, but only provides for Hankins to assume, and hold Rudolf harmless from, Hankins' own liability. Pekin argues that in the hold-harmless provision, Hankins agrees to indemnify and hold Rudolf harmless against all claims arising out of any work performed by Hankins and caused in whole or in part by a negligent act or omission by Hankins, but Hankins does not agree to indemnify or hold Rudolf harmless for Rudolf's own negligence. In other words, Pekin argues that Hankins agrees only to reimburse or indemnify Rudolf for that portion of Rudolf's damages or expenses attributable to Hankins' negligence, and not for that portion caused by

Rudolf's own negligence. Thus, Pekin argues, Hankins is not assuming liability for the negligence of another but is only assuming liability for its own negligence and, therefore, the hold-harmless provision is not an "insured contract."

Hankins counters that paragraph 11(a) is an indemnity contract and is therefore an "insured contract" within the meaning of the policy. Thus, the issue is simply distilled and stated as whether the Agreement, and specifically the hold-harmless provision contained in paragraph 11(a) thereof, is an "insured contract" within the meaning of the Pekin policy.

According to the terms of the policy, an "insured contract" is one that provides for one of the contracting parties to assume someone else's tort liability, that is, someone else's liability for their own negligence. Thus, an "insured contract" is one in which one of the contracting parties agrees to indemnify the other from and against that other party's own negligence.

■ ■ This court has recognized that an indemnity contract will not be construed as indemnifying one against his own negligence unless such intention is clearly and explicitly or unequivocally expressed in the contract. *Hader v. St. Louis Southwestern Ry. Co.*, 207 Ill. App. 3d 1001, 1011 (1991). The nature of such a contract requires that the agreement be strictly construed against indemnity. See *Hader*, 207 Ill. App. 3d at 1011. While it is not necessary that a specific reference to indemnification against liability arising out of the indemnitee's negligence be provided for in the agreement, and the agreement must be given a fair and reasonable interpretation based upon a consideration of all the language and provisions (see *Hader*, 207 Ill. App. 3d at 1011), we do not find the instant hold-harmless agreement to clearly, explicitly, and unequivocally express the parties' intention that Hankins would indemnify Rudolf against Rudolf's own negligence. To the contrary, the Agreement in the case at bar provides that Hankins will indemnify Rudolf for damages for bodily injury caused in whole or in part by *Hankins'* negligent act or omission. This language appears to limit Hankins' liability to its own negligence and does not extend to the negligence of Rudolf. We simply do not find that the language of the hold-harmless agreement clearly expresses an intention to indemnify Rudolf against its own negligence.

Accordingly, because in the hold-harmless provision Hankins has not agreed to assume the tort liability of Rudolf but has only agreed to indemnify Rudolf to the extent of Hankins' own negligence, the Agreement is not an "insured contract" within the meaning of the Pekin policy. Pekin is therefore not obligated to defend Hankins against the allegations of count II of Rudolf's amended third-party complaint.

■ We turn now to the question of Pekin's duty to defend Hankins against the allegations of count III of the third-party complaint. In that count, Rudolf seeks damages from Hankins for breach of contract, specifically, the breach of the Agreement provision requiring Hankins to procure commercial liability insurance naming Rudolf as an additional insured. Hankins does not dispute Pekin's argument that claims for breach of contract do not fall within the coverage of the Pekin policy. As Pekin points out, the failure to procure the insurance required by a contract is not an act protected by a general liability insurance policy, which protects only against bodily injury and property damage. See *Motor Vehicle Casualty Co. v. GSF Energy, Inc.*, 193 Ill. App. 3d 1, 10 (1989). Hankins argues only that Pekin's duty to defend it against count III arises only from its duty to defend Hankins against count II. See *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73 (1991). Because we have found that Pekin has no duty to defend Hankins against count II of the third-party complaint, it follows that Pekin has no duty to defend Hankins against count III of the third-party complaint.

For the foregoing reasons, the judgment on the pleadings entered by the circuit court of Effingham County in favor of Hankins is hereby reversed, and judgment is hereby entered on the pleadings in favor of Pekin.

Reversed.

RARICK, P.J., and GOLDENHERSH, J., concur.