# Illinois Official Reports

## Appellate Court

---

### *Pekin Insurance Co. v. Designed Equipment Acquisition Corp.*,
### 2016 IL App (1st) 151689

---

| | |
|---|---|
| Appellate Court Caption | PEKIN INSURANCE COMPANY, Plaintiff-Appellee, v. DESIGNED EQUIPMENT ACQUISITION CORPORATION, an Illinois Corporation, d/b/a Designed Equipment Corporation, and HERON SALGADO, Defendants (Designed Equipment Acquisition Corporation, an Illinois Corporation, d/b/a Designed Equipment Corporation, Defendant-Appellant). |
| District & No. | First District, First Division<br>Docket No. 1-15-1689 |
| Filed | September 12, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-CH-10908; the Hon. Peter Flynn, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Gregory R. Spelson, of Daniel G. Suber & Associates, of Chicago, for appellant.<br><br>Robert Marc Chemers and Peter G. Syregelas, both of Pretzel & Stouffer Chtrd., of Chicago, for appellee. |

| Panel | PRESIDING JUSTICE CONNORS delivered the judgment of the court, with opinion.
Justice Cunningham and Justice Harris concurred in the judgment and opinion. |

**OPINION**

¶ 1     This case involves a declaratory action that was brought as a result of an insurance policy coverage dispute. Both parties to the litigation filed cross-motions for summary judgment. The trial court granted plaintiff's motion and denied defendant's motion, effectively denying coverage for defendant. Defendant now appeals, arguing that the policy at issue contains an ambiguity that the court below should have construed in favor of defendant and that the lease constituted an "insured contract," which would provide defendant with insurance coverage. For the reasons set forth below, we affirm.

¶ 2                                     I. BACKGROUND

¶ 3     On May 20, 2010, Abel Building & Restoration (Abel) entered into a rental agreement with defendant, Designed Equipment Acquisition Corporation (Designed), whereby Designed leased Abel scaffolding materials. The lease agreement was signed by representatives from Abel and Designed. The lease agreement stated that the rented materials would be delivered to Abel's jobsite at 500 East 51st Street, Chicago, Illinois. The lease agreement also contained various clauses and provisions, including, *inter alia*, an indemnification provision that read:

> "15.INDEMNIFICATION: LESSEE SHALL INDEMNIFY AND DEFEND LESSOR AGAINST AND HOLD LESSOR HARMLESS FROM ANY AND ALL CLAIMS, ACTIONS, SUITS, PROCEEDINGS, COSTS, EXPENSES, DAMAGES AND LIABILITIES, INCLUDING REASONABLE ATTORNEY'S FEES, WHICH: (A) RELATE TO INJURY OR TO DESTRUCTION OF PROPERTY, OR BODILY INJURY, ILLNESS, SICKNESS, DISEASE OR DEATH OF ANY PERSON (INCLUDING EMPLOYEES OF LESSEE); AND (B) ARE CAUSED OR CLAIMED TO BE CAUSED, IN WHOLE OR IN PART BY THE EQUIPMENT LEASED HEREIN OR BY THE LIABILITY OR CONDUCT (INCLUDING ACTIVE, PASSIVE, PRIMARY OR SECONDARY) OF LESSOR, ITS AGENTS OR EMPLOYEES, OR ANYONE FROM WHOSE ACTS ANY OF THEM MAY BE LIABLE. THE PARTIES AGREE THAT LESSOR SHALL ONLY BE LIABLE OR RESPONSIBLE FOR ACTIONS OF WILFUL MISCONDUCT. LESSEE SHALL AT ITS OWN COST AND EXPENSE, DEFEND LESSOR AGAINST ALL SUITS OR PROCEEDINGS COMMENCED BY ANYONE IN WHICH LESSOR IS A NAMED PARTY FOR WHICH LESSOR IS ALLEGED TO BE LIABLE OR RESPONSIBLE AS A RESULT OF OR ARISING OUT OF THE EQUIPMENT, OR ANY ALLEDGED [*sic*] ACT OR OMISSION BY LESSOR AND LESSEE SHALL BE LIABLE AND RESPONSIBLE FOR ALL COSTS, EXPENSES AND REASONABLE ATTORNEY'S FEES INCURRED IN SUCH DEFENSE AND/OR SETTLEMENT, JUDGMENT OR OTHER RESOLUTION OF THE CLAIM IN THE

EVENT THAT SUCH ACTION IS COMMENCED NAMING LESSOR AS A PARTY, LESSOR MAY ELECT TO DEFEND SAID ACTION ON ITS OWN BEHALF AND LESSEE AGREES THAT IT SHALL BE LIABLE FOR ALL COSTS, EXPENSES AND REASONABLE ATTORNEY'S FEES INCURRED BY LESSOR IN SUCH DEFENSE.

PURPOSE OF THIS CLAUSE: IT IS THE PURPOSE OF THIS CLAUSE TO SHIFT THE RISK OF ALL CLAIMS RELATING TO THE LEASED PROPERTY TO THE LESSEE DURING THE ENTIRE TERM OF THIS LEASE.

\* \* \*

23. INSURANCE: Lessee shall keep the equipment insured against all risks of loss or damage from every cause whatsoever for not less than the full replacement value thereof and shall carry commercial general public liability and property damage insurance with full contractual liability to cover this lease. Lessee's failure to have such insurance shall be a breach hereof and subject to termination as provided in Paragraph 10.

Lessee shall also designate Lessor, its agents, employees, officers, and directors as additional insured parties under all policies of insurance by Lessee as their interests may appear and shall furnish evidence thereof to Lessor. *See* Exhibit A."

¶ 4     In September 2010, Abel procured a commercial lines insurance policy from plaintiff, Pekin Insurance Company (Pekin), for the period of September 22, 2010, to September 22, 2011. The policy provided for commercial general liability coverage protection and listed Abel as the named insured. The policy contained an additional insured endorsement titled "Contractors Additional Insured/ Waiver of Rights of Recovery Extension Endorsement" (contractors endorsement). In relevant part, the contractors endorsement stated:

"1. Additional Insured - When Required By Written Construction Contract For Ongoing Operations Performed By You For An Additional Insured and/or Your Completed Operations

A. With respect to coverage afforded under this section of the endorsement, Section II - Who Is An Insured is amended to include as an insured any person or organization for whom you are performing operations, when you and such person or organization have agreed in a written contract effective during the policy period stated on the Declarations Page (hereinafter referred to as the 'Policy Period') and executed prior to the 'bodily injury' or 'property damage' for which coverage is sought, that you must add that person or organization as an additional insured on a policy of liability insurance (hereinafter referred to as the 'Additional Insured').

The Additional Insured is covered only with respect to vicarious liability for 'bodily injury' or 'property damage' imputed from You to the Additional Insured as a proximate result of:

(1) Your ongoing operations performed for that Additional Insured during the Policy Period; or

(2) 'Your work' performed for the Additional Insured during the Policy Period, but only for 'bodily injury' or 'property damage' within the 'products - completed operations hazard.'

B. It is further understood that the designation of any person or organization as an Additional Insured:

(1) does not increase the scope or limits of coverage afforded by this policy; and

(2) does not apply if the person or organization is specifically named as an additional insured under any other provision of this policy.

C. With respect to the coverage afforded to the Additional Insured, the following additional exclusions apply:

This insurance does not apply to:

(1) Liability for 'bodily injury' or 'property damage' arising out of the rendering of, or the failure to render, any professional services, including, but not limited to:

(a) The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications, or

(b) Supervisory, inspection, architectural or engineering activities.

(2) Liability for 'bodily injury' or 'property damage' arising out of or in any way attributable to the claimed negligence or statutory violation of the Additional Insured, other than vicarious liability which is imputed to the Additional Insured solely by virtue of the acts or omissions of the Named Insured."

¶ 5 The policy contained another endorsement titled "Additional Insured-Lessor of Leased Equipment" (lessors endorsement), that contained a "schedule" that listed a company called "PAC VANS" as the only additional insured in that endorsement. In its entirety, the lessors endorsement read:

"A. Section II - Who Is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule. [B]ut only with respect to liability for 'bodily injury', 'property damage' or 'personal and advertising injury' caused, in whole or in part, by your maintenance, operation or use of equipment leased to you by such person(s) or organization(s).

B. With respect to the insurance afforded to these additional insureds, this insurance does not apply to any 'occurrence' which takes places after the equipment lease expires."

¶ 6 The policy also contained a contractual liability exclusion that read:

"2. Exclusions

This insurance does not apply to:

***

b. Contractual Liability

'Bodily injury' or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in contract or agreement that is an 'insured contract', provided the 'bodily injury' or 'property damage' occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an 'insured contract', reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of 'bodily injury' or 'property damage', provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same 'insured contract'; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged."

The policy's definition for "insured contract" that is relevant in this case is:

"f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement."

¶ 7 Subsequent to Abel beginning work at the jobsite on 51st Street, one of its employees who was working at the jobsite, Heron Salgado, was injured. Salgado was injured on two occasions: January 17, 2011, when a heavy bucket allegedly fell on him, and January 19, 2011, when he allegedly fell into an opening in the scaffolding. In December 2012, he filed two separate lawsuits for his personal injuries against Designed, which were thereafter consolidated. Salgado's complaints alleged that Designed was contracted by Abel to "design, build, erect, operate[,] and maintain a certain scaffold [Salgado] was required to use in order to perform his work." Salgado's complaints further alleged that Designed negligently caused his injuries in the following ways: failed to properly design the scaffold; failed to properly construct and erect the scaffold; failed to maintain proper safety measures for persons in and about the scaffold; failed to properly monitor, inspect, and review the design, construction, and erection of the scaffold; allowed a defective scaffold to be erected while knowing that its condition was dangerous to persons working on the scaffold; failed to take necessary precautions and implement safeguards for the safety of those working on the scaffold; provided an unsafe scaffold; and was otherwise guilty of negligence.

¶ 8 As a result of Salgado's complaints, Designed tendered its defense to its own insurance company and then to Pekin, Abel's insurance company, in a letter dated May 23, 2014. Pekin responded to Designed's letter on June 19, 2014, and rejected the tender of defense, stating that although the policy issued to Abel was endorsed with an additional insured endorsement, Designed was not an additional insured under the policy. Pointing to the language of the contractors endorsement, Pekin asserted that the endorsement "amends to the who is an insured definition to include 'any organization for whom you [Abel] are performing operations ***' and we point out that Abel was not performing operations for Designed at the time of either alleged accident, but was leasing or renting a scaffold and related appurtenant parts from Designed." Pekin further explained that, in the alternative, if Designed were an additional insured, its defense would still be rejected because Abel's policy excluded coverage for the negligence of the additional insured. Pekin also suggested, *inter alia*, that it would not provide

coverage because Salgado sued Designed for its own negligence, not vicarious liability for the acts or omissions of Abel. Finally, Pekin acknowledged the indemnity provision from the lease agreement between Designed and Abel but argued that although the policy's exclusion for bodily injuries contained an exception for an insured contract, such contracts involving construction were void against public policy in Illinois.

¶ 9 On June 30, 2014, Pekin filed the complaint for declaratory judgment from which this appeal stems. Designed and Salgado[1] were named as defendants. Pekin's complaint contained three counts, each seeking a declaration that it did not have a duty to defend Designed. Count I alleged that Designed was not an additional insured under the contractors endorsement because Abel did not perform operations for Designed and Salgado's complaints did not allege Abel performed any operations for Designed. Count II, which was pled in the alternative, alleged that Designed was not entitled to coverage because Designed was sued for its own negligence and the contractors endorsement specifically excluded coverage for the negligence of any additional insured. Count III, also pled in the alternative, alleged that Pekin had no duty to defend Designed because the lease between Abel and Designed did not qualify as an "insured contract" pursuant to the policy, and even if it did, said agreement would be void under the Construction Contract Indemnification for Negligence Act (Act) (740 ILCS 35/1 (West 2012)), which reads:

"With respect to contracts or agreements, either public or private, for the construction, alteration, repair or maintenance of a building, structure, highway bridge, viaducts, or other work dealing with construction, or for any moving, demolition or excavation connected therewith, every covenant, promise or agreement to indemnify or hold harmless another person from that person's own negligence is void as against public policy and wholly unenforceable."

¶ 10 Designed filed its answer to Pekin's complaint on August 26, 2014, denying the material allegations of the complaint. Designed did not file any affirmative defenses or motions to dismiss.

¶ 11 On January 5, 2015,[2] Pekin filed its motion for summary judgment, essentially reiterating the arguments made in its letter rejecting Designed's tender of defense. Namely, Pekin argued Designed was not an additional insured under Abel's policy because Abel was not performing operations for Designed at the time of Salgado's injury; even if Designed was an additional insured, there was no coverage where the additional insured was sued for its own negligence, not the negligence of the named insured; and there was no duty to defend even if the lease between Abel and Designed was an insured contract, because it was void under Illinois law.

---

[1]Pekin's complaint stated that Salgado was "a nominal but necessary party to this declaratory judgment action and who [was] joined herein solely to be bound by the judgment rendered in this cause although no specific relief is sought against him." We point this out to make clear that Salgado is not a party to this appeal.

[2]We note that the copy of Pekin's motion for summary judgment that is contained in the record is file-stamped by the clerk of court as being filed on "January 5, 2016." However, it is clear from the other documentation in the record and the timeline of this case that said date is an error and the motion should have been file-stamped with the year 2015, not 2016. Thus, we presume the motion was actually filed on January 5, 2015 for purposes of this appeal.

¶ 12    On February 20, 2015, Designed filed its cross-motion for summary judgment and response to Pekin's motion for summary judgment. Designed asserted that summary judgment should be granted in its favor because "Abel, Pekin's insured, became legally obligated to pay any damages that Salgado may recover from [Designed] because Abel assumed such liability when it entered into the [c]ontract to lease [Designed's] scaffolding." Designed further argued that the lease agreement between it and Abel met the policy's definition of an insured contract and thus was not excluded from coverage. Designed contended that the case law cited by Pekin involved "a much different indemnification agreement" than the one at issue here. Further, the Act was not applicable and did not void the indemnification provisions in the lease between Abel and Designed.

¶ 13    Sometime thereafter,[3] Pekin filed its response to Designed's cross-motion for summary judgment and reply in support of its motion for summary judgment. Pekin began its response/reply by pointing out that Designed "seem[ed] to take little to no issue with the fact that it does not find itself within the coverage of the Pekin policy by virtue of the [contractors] endorsement"; thus Pekin relied on its argument in its motion for summary judgment for counts I and II of its complaint. As for count III, Pekin argued that Designed's assertion that its agreement with Abel was an "insured contract" because it was merely a lease, not a construction contract, must fail. Pekin cited two cases to support this proposition, *Folkers v. Drott Manufacturing Co.*, 152 Ill. App. 3d 58 (1987), and *American Pecco Corp. v. Concrete Building Systems Co.*, 392 F. Supp. 789 (N.D. Ill. 1975). Pekin argued that the lease agreement here fell within the parameters of the Act, because the contract involved the lease of scaffolding to Abel, a building restoration company. Pekin pointed to the terms and conditions of the lease agreement that forbid the use of the scaffold in any other manner than for use at the jobsite.

¶ 14    Designed filed its reply in support of its cross-motion for summary judgment on March 25, 2015. In its reply, Designed primarily reiterated its arguments from its cross-motion. Designed also asserted that Pekin failed to explain how count I of its complaint is somehow dispositive of the remaining counts. Designed argued that its lease agreement with Abel qualified as an insured contract but was not a construction contract and therefore not void under the Act. Designed stressed that its agreement with Abel was a lease, not a subcontract agreement that obligated either party to perform any construction, demolition, or excavation, thus rendering it outside the realm of a construction contract. Designed also attacked the case law cited by Pekin, calling the *Folkers* case "outdated" and "markedly different than the contract at issue here." Designed argued that merely because the scaffolding that was the subject of the lease was later used by Abel in restoration work does not transform the lease into a construction contract for purposes of the Act.

¶ 15    The trial court held a hearing on both motions for summary judgment on May 6, 2015. The parties presented oral arguments, and the court expressed its ruling on the record. While the parties were arguing their positions regarding whether Designed should be considered an additional insured under the policy, counsel for Pekin referred to the lease agreement between Abel and Designed as a "subcontract." Counsel for Designed thereafter stated, "[t]here is absolutely no evidence that the contract was a subcontract. Designed Equipment was never a

---

[3]The copy of Pekin's response contained in the record is not file-stamped, thus the exact date that it was filed is unclear.

subcontractor of Abel. They never provided any construction duties at this job site. It was merely a rental agreement or a lease agreement. It was not a subcontract agreement." The following exchange then occurred regarding Designed's counsel's position:

"MR. SYREGELAS [Pekin's attorney]: I'll clear that up. Subcontract was a slip of the tongue.

THE COURT: What you've done there is put yourself—

MR. SYREGELAS: Out of the endorsement.

THE COURT: I have to find—is to put yourself out of the additional insured endorsement. If Abel and Designed don't have some kind of subcontract relationship, then it doesn't make sense to say either is performing work for the other. And the subcontractor—it would be additional insured definition requires that one be performing work for the other, correct?

MR. DEBRE [Designed's attorney]: That is a portion of the policy, but I think our main arguments are to this contract being an insured contract under the policy."

The court then stated that it believed that if it did not get past the additional insured portion of the contract, then it did not have to reach the issue of whether the lease was an insured contract.

¶ 16    Ultimately, the court stated that it found in favor of Pekin for two reasons. First, the court agreed with Pekin that the policy in question "ha[d] an additional insured endorsement that would not cover the rental contract at issue here." The court explained that the language of the contractors endorsement that applied to "any person or organization for whom [Abel is] performing operations" simply did not fit the factual scenario here. Rather, the court noted that such language is "intended to cover classic subcontract relations" and that it was drafted to cover "upstream insurance obligations."[4] The court also found for Pekin on the issue of whether the lease agreement between Abel and Designed constituted an insured contract, determining that it did, but that it was void. The court mentioned that it found the cases cited to be "less than squarely on point," but nevertheless concluded that the parties here knew the scaffold was for use in a construction project. Thus, the Act applied and the insured contract was void. The court stated that Pekin prevailed on counts I and III, and that count II was "not addressed separately, but it is subsumed in the analysis of Count I." As a result, the court granted Pekin's motion for summary judgment as to all three counts and denied Designed's cross-motion.

¶ 17    On June 5, 2015, Designed timely filed its notice of appeal.

¶ 18                                  II. ANALYSIS

¶ 19    "The construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court and appropriate subjects for disposition by summary judgment." (Internal quotation marks omitted.) *Liberty Mutual Fire Insurance Co. v. St. Paul Fire & Marine Insurance Co.*, 363 Ill. App. 3d 335, 338 (2005). "When parties file cross-motions for summary judgment, they agree that only a question of law is involved and invite the trial court to decide [the] issues based on the record." *Pielet v. Pielet*, 2012 IL

---

[4]The court defined "upstream insurance obligations," stating "the construction food chain has a liability going down and insurance liability going up. Every subcontractor is requiring the people below to insure him and so on up the line until we get to the owner."

112064, ¶ 28. However, the mere filing of cross-motions for summary judgment does not establish that there is no issue of material fact, nor does it obligate the court to render summary judgment. *Id.* Summary judgment is appropriate only where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue [of] material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2012). We review *de novo* a ruling on a motion for summary judgment. *Clark Investments, Inc. v. Airstream, Inc.*, 399 Ill. App. 3d 209, 213 (2010).

¶ 20 Designed makes two arguments on appeal: (1) the Pekin insurance policy contained an ambiguity given the presence of its two additional insured endorsements with differing terms and provisions, which the trial court should have construed in favor of Designed and found that Pekin had a duty to defend, and (2) the lease agreement between Abel and Designed constituted an insured contract within the meaning of the policy thereby allowing coverage, and no legal precedent exists to hold the contract void under the Act. We address each of these arguments and Pekin's responses thereto below.

¶ 21 Designed's argument that Abel's insurance policy contained an ambiguity due to the purportedly conflicting language of the contractors endorsement and the lessors endorsement was not raised, or even mentioned, in the court below and thus is forfeited on appeal. Designed contends that an ambiguity exists because the lessors endorsement and the contractors endorsement contain differing terms and provisions. Pekin responds that such an argument was never brought up in the court below and is therefore waived on appeal. In its reply, Designed asserts that waiver does not apply because "Count I and the purported underlying theory for it [the contractors endorsement] were directly addressed by [Designed] in the underlying litigation." Designed further argues that "[e]ven assuming that a party makes an argument not previously perfected at some previous point in the record, the 'waiver' rule does not limit a court's powers of review."

¶ 22 "It is well settled that issues not raised in the trial court are deemed waived and may not be raised for the first time on appeal." *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 536 (1996). However, "waiver is an admonition to the parties, not a limitation upon the powers of [the] courts of review." (Internal quotation marks omitted.) *Northwestern Memorial Hospital v. Sharif*, 2014 IL App (1st) 133008, ¶ 21. This court has the discretion to review the merits of a party's argument in the interest of judicial economy and where the necessary facts to understand the argument are simple. *Zadrozny v. City Colleges of Chicago*, 220 Ill. App. 3d 290, 292-93 (1991).

¶ 23 After a review of the May 6, 2016, hearing transcript, the parties' cross-motions for summary judgment, responses, and replies, it is clear that the lessors endorsement was never addressed by the parties or the court. Similarly, the policy's alleged ambiguity that Designed raises in its appellate brief was also never examined by the trial court. Designed attempts to make it seem as though the trial court, in fact, addressed its argument regarding the lessors endorsement and the policy's alleged ambiguity by asserting that the trial court thoroughly examined count I and the theories underlying it. However, Designed *never* pointed out the existence of the lessors endorsement or argued that the policy contained an ambiguity. Although Designed blames Pekin for solely focusing on the contractors endorsement, Designed could have argued the relevance of the lessors endorsement and any purported ambiguity in its own motion for summary judgment or in its response to Pekin's motion for summary judgment, but it never did. Likewise, Designed did not file a counterclaim, a motion

to dismiss, or an affirmative defense, any of which could have acted as a vehicle to address the lessors endorsement or alleged ambiguity. The trial court never examined the issue of the lessors endorsement or any alleged ambiguity at the hearing on the cross-motions, because these issues were never raised by either party. Thus, Designed is essentially asking this court to undertake a policy interpretation that was not performed by the circuit court. We do not agree with Designed's categorization of the facts here as being "remarkably simple," and we exercise our discretion not to address Designed's argument for the first time on appeal. See *Zadrozny*, 220 Ill. App. 3d at 292-93. We now turn to Designed's remaining argument.

¶ 24    Designed next argues that the lease agreement between Abel and Designed constituted an insured contract within the meaning of the policy thereby allowing coverage and asserts that no legal precedent exists to hold the contract void under the Act. Pekin responds that the court's findings regarding the lease agreement as an insured contract and the resultant application of the Act to void the agreement were correct. Specifically, Pekin contends that the parties did not enter into an insured contract, and even if they had, the Act applies to void such a contract. The trial court determined that the Act applies and voids the agreement here, stating "[i]t's very hard for me not to conclude that both sides to this transaction knew that the purpose of the scaffold was for use in a construction project ***. To take any other view would encourage the artful drafting of what are really construction contracts to pretend they're something else, and it seems to me that neither sound public policy nor a sensible reading of the statute would warrant such an approach."

¶ 25    An indemnity agreement is a contract subject to contract interpretation rules. *Buenz v. Frontline Transportation Co.*, 227 Ill. 2d 302, 308 (2008). "It is well settled that indemnity contracts are [to be] strictly construed and will not be construed as indemnifying against a party's own negligence unless such a construction is required by the clear and explicit language of the contract." *Bituminous Casualty Corp. v. Plano Molding Co.*, 2015 IL App (2d) 140292, ¶ 8. We review the interpretation of a contract *de novo*. *Id.*

¶ 26    Designed argues that Abel became legally obligated to pay for damages that Salgado may recover from Designed. Paragraph 15 of the lease agreement between Abel and Designed contained an indemnification clause that stated, *inter alia*:

> "[Abel] shall indemnify and defend [Designed] against and hold [Designed] harmless from any and all claims *** which relate to *** bodily injury *** and are caused or claimed to be caused, in whole or in part by the equipment leased herein or by the liability or conduct *** of [Designed]. *** [Abel] shall *** defend [Designed] against all suits or proceedings commenced by anyone in which [Designed] is a named party for which [Designed] is alleged to be liable or responsible as a result of or arising out of the equipment, or any alledged [*sic*] act or omission by [Designed]."

See *supra* ¶ 4. Abel's policy from Pekin contains an exclusions section that excluded contractual liability for bodily injury or property damage that Abel would be required to pay by reason of assumption of liability in a contract or agreement. See *supra* ¶ 7. The policy's exclusions section also stated that the contractual liability exclusion does not apply to liability that is assumed in an insured contract. *Id.*

¶ 27    The parties disagree as to whether the indemnity provision from the lease constitutes an insured contract. Designed argues that it is an insured contract and thus the exclusion does not apply, requiring Pekin to provide coverage. Pekin responds that the lease agreement is not an insured contract because the indemnity provision does not clearly and explicitly express the

parties' intent that Abel would indemnify Designed for Designed's own negligence. Rather, Pekin contends, the indemnity provision only requires Abel to indemnify Designed to the extent of Abel's own negligence and cites the case of *Hankins v. Pekin Insurance Co.*, 305 Ill. App. 3d 1088 (1999), as support for its position.

¶ 28    The *Hankins* case involved a declaratory action brought by Hankins, a cartage company that operated a trucking terminal, against its insurer. *Id.* at 1089. At issue was the language of an agreement Hankins entered into with Rudolf, a motor freight carrier, and whether their agreement constituted an insured contract. *Id.* The hold-harmless provision in Hankins and Rudolf's agreement stated that Hankins agreed to indemnify and hold Rudolf harmless from claims, damages, losses, and expenses which might arise out of work performed by Hankins and caused by Hankins' negligence. *Id.* at 1089-90. The court determined that the language of the hold-harmless provision did not clearly and explicitly express the parties' intent that Hankins would indemnify Rudolf against Rudolf's own negligence but instead found that the agreement provided that Hankins would indemnify Rudolf against liability caused by Hankins negligence. *Id.* at 1093. Thus, the court held that the hold-harmless provision was not an insured contract within the meaning of the policy. *Id.*

¶ 29    Looking to the language of the indemnity provision of the lease between Abel and Designed, it is clear to this court that the language constitutes an insured contract, thus we disagree with Pekin's argument and find this case to be factually distinct from *Hankins*. According to the policy here, an insured contract is defined as "[t]hat part of any contract or agreement pertaining to [Abel's] business *** under which [Abel] assume[s] the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement." The indemnity provision in the lease between Abel and Designed states that "[Abel] shall indemnify and defend [Designed] against and hold [Designed] harmless from any and all claims, actions, suits, proceedings, costs, expenses, damages, and liabilities ***, which: (A) relate to *** bodily injury ***, and (B) are caused by *** [Designed]." Unlike the language of the hold-harmless provision in *Hankins*, the language of the indemnity provision in the lease requires Abel to indemnify Designed for Designed's own negligence. Therefore, we find that an insured contract exists because the language of the indemnity provision clearly and explicitly evidences the parties' intent that Abel agreed to indemnify Designed against Designed's own negligence.

¶ 30    Having found that the lease agreement was an insured contract, we turn to Pekin's argument that even if it was an insured contract, the Act applies to void the agreement. The Act provides:

> "With respect to contracts or agreements, either public or private, for the construction, alteration, repair or maintenance of a building, structure, highway bridge, viaducts, or other work dealing with construction, or for any moving, demolition or excavation connected therewith, every covenant, promise or agreement to indemnify or hold harmless another person from that person's own negligence is void as against public policy and wholly unenforceable." 740 ILCS 35/1 (West 2012).

¶ 31    Designed contends that the Act should not apply to void the insured contract because the contract at issue is a simple, straightforward agreement for the rental of equipment, not a construction contract within the meaning of the Act. Pekin asserts that the agreement is void under the Act because it involved the lease of scaffolding to a building restoration company

- 11 -

and delivered to a construction site. Also, Pekin points to the language of the lease that stated that the scaffolding "equipment will not be removed from the job address unless approved by [Designed] in writing prior thereto." The trial court found the agreement to be "a contract for a scaffold and a site for delivery of the materials that are going to make the scaffold—in other words, [Designed is] going to assemble the scaffold—which the parties have told me here is a construction site. It's very hard for me not to conclude that both sides to this transaction knew that the purpose of the scaffold was for use in a construction project, and if this is so, then in my view, construing the anti-indemnification act, the statute should apply." The trial court also noted that although "the cases don't fit comfortably," Pekin still should prevail.

¶ 32    We agree with the trial court's conclusion that the Act should apply here and also recognize as accurate its statement that the existing cases are not exactly on point. In *Folkers v. Drott Manufacturing Co.*, 152 Ill. App. 3d 58, 66 (1987), which was cited by Pekin in support of its assertions, the court found that the indemnity provision of a rental contract for a crane fell squarely within parameters of the Act and was therefore void where the agreement stated that the crane's purpose was "for use in construction operations." Unlike *Folkers*, the agreement here does not expressly state the purpose of the lease as being for construction operations, thus it is not directly on point. The remainder of the cases cited by both parties are from the federal courts. We note that the federal cases are not binding on this court. *SK Handtool Corp. v. Dresser Industries, Inc.*, 246 Ill. App. 3d 979, 986 (1993). However, even looking at those cases, we do not find them to be parallel to the case at bar. See *Avalos v. Pulte Home Corp.*, No. 04 C 7092, 2006 WL 3813735 (N.D. Ill. Dec. 22, 2006) (finding that the agreement at issue was not a construction contract where the primary duty under the contract was to deliver building materials rather than perform actual acts of construction), *Winston Network, Inc. v. Indiana Harbor Belt R.R. Co.*, 944 F.2d 1351 (7th Cir. 1991) (holding that the Act did not apply where a painter was injured while painting advertisement on a railroad bridge because the advertising agreement at issue did not involve construction), *Gama v. Central Rent-a-Crane, Inc.*, No. 88 C 9590, 1989 WL 121275 (N.D. Ill. Sept. 28, 1989) (applying Indiana law, the court ordered that a motion for judgment on the pleadings be denied where further factual development was necessary to determine if the contract at issue affected nonhighway construction), and *American Pecco Corp. v. Concrete Building Systems Co.*, 392 F. Supp. 789 (E.D. Ill. 1975) (determining that where a lessor not only provided a crane but also the operator for the crane, lessor became a subcontractor in the construction of a building and the lease's indemnity provision was voided by the Act).

¶ 33    The Act expressly states that it applies to "contracts or agreements, either public or private, for the construction, alteration, repair or maintenance of a building, structure, highway bridge, viaducts, or other work dealing with construction." 740 ILCS 35/1 (West 2012). Here, the contract at issue between Abel and Designed is a lease or rental agreement for scaffolding equipment. Both parties admit that the lease does not contain the word "construction." However, we have not found any case that states that there is a magic word that must be used in an agreement in order to bring it within the purview of the Act.

¶ 34    Using a common sense approach when looking to the language of the lease and the facts of this case, as was done by the trial court, we believe it is evident that the lease agreement here involves, at least, "other work dealing with construction." 740 ILCS 35/1 (West 2012). First, the lessee of the equipment is listed in the lease as "Abel Building Restoration," which evidences the type of company Designed was leasing the equipment to. Additionally, the "bill

- 12 -

to" and "ship to" addresses are different, which reasonably would lead one to believe that the scaffolding equipment was to be shipped to the jobsite where it would be used, rather than Abel's corporate or office address from which the bills are paid. The lease also states that the equipment was not to be removed from the jobsite unless approved by Designed in writing. Thus, Abel was not free to use the scaffolding anywhere but the location to which it was delivered. The parties agree that the lease required Designed to deliver and assemble the scaffolding. Thus, it could also be inferred that Designed knew what type of jobsite was at issue because its employees went to the site to deliver and assemble the scaffolding. However, even looking past the assumption that Designed knew the type of site based on its employees actually going to the site, we believe that the language of the lease and the type of equipment involved, on its own, renders the agreement as one that involves "other work dealing with construction." The lease required Designed to deliver and assemble scaffolding, which is certainly a type of work that deals with construction, and if not construction specifically, then "alteration, repair or maintenance of a building." Either way, the lease here falls under the Act, rendering the insured contract void. We, like the trial court, cannot imagine that a lease of scaffolding equipment by a building restoration company can be reasonably interpreted as not being for the "construction, alteration, repair or maintenance" of a building or structure or "other work dealing with construction." Designed is asking this court to render an interpretation of the lease that runs contrary to common sense, and we refuse to do so.

¶ 35                                                    III. CONCLUSION

¶ 36        Based on the foregoing, we affirm the trial court's decision to grant Pekin's motion for summary judgment on all three counts and deny Designed's cross-motion for summary judgment.

¶ 37        Affirmed.